RICHARD KOHUTKO *et al.*, Plaintiffs-Appellees, v. FOUR COLUMNS, LTD., Defendant and Third-Party Plaintiff-Appellant (F. D. Masonry, Inc., Third-Party Defendant-Appellee).

First District (4th Division)   No. 85—2318

Opinion filed September 30, 1986.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Algimantas Kezelis and Russell P. Veldenz, of counsel), for appellant.

John J. Henely, Ltd., of Chicago (Corboy & Demetrio, P.C., of counsel), for appellee Richard Kohutko.

Robert A. Clifford & Associates, of Chicago (Robert A. Clifford, Philip H. Corboy, and Robert P. Sheridan, of counsel), for appellee Mitchell Ruiz.

John Cadwalader Menk & Associates, of Chicago (John Cadwalader Menk, of counsel), for appellee F. D. Masonry, Inc.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant and third-party plaintiff, Four Columns, Ltd., appeals from the trial court's decision directing a verdict for plaintiffs, Richard Kohutko and Mitchell Ruiz. Four Columns further appeals from the jury's finding that it was 95% responsible for plaintiffs' injuries and F. D. Masonry, Inc., third-party defendant, only 5% respon-

sible.

Four Columns makes the following arguments against F. D. Masonry: (1) improper statements by F. D. Masonry in its closing argument requires reversal; (2) the trial court gave improper jury instructions; (3) the trial court erred in refusing its request to allow the jury to view exhibit Nos. 3, 4, and 5 in the jury room; and (4) the jury's finding that it was 95% responsible for plaintiffs' injuries is against the manifest weight of the evidence.

Four Columns makes the following arguments against plaintiffs Kohutko and Ruiz: (1) the trial court erred in admitting handwritten summaries of plaintiffs' lost income and in allowing the jury to view the summaries in the jury room; (2) plaintiffs did not prove that Four Columns' alleged negligence was wilful; (3) the trial court erred in admitting the speculative and hearsay testimony of Dr. Strzyz and plaintiff Kohutko; and (4) the trial court erred in giving plaintiffs' jury instruction Nos. 44 and 49 as to damages.

We affirm.

This case arose out of an accident occurring on a construction site in Elk Grove Village on September 4, 1980. Plaintiffs were injured when the scaffolding on which they were standing collapsed. Plaintiffs filed suit against the general contractor, Four Columns, under the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, par. 60). Four Columns filed a third-party contribution action against F. D. Masonry. F. D. Masonry employed plaintiffs and was the subcontractor that erected the scaffolding which collapsed. At the close of all the evidence, the trial court directed liability in favor of plaintiffs; the court also directed liability against F. D. Masonry as to the third-party action filed by Four Columns. The issues of damages and percentages of contributions were submitted to the jury.

Four Columns, the general contractor, contracted with the owner to erect three commercial warehouses. Four Columns subcontracted with F. D. Masonry to perform the masonry work. As the general contractor, Four Columns assumed contractual responsibility for safety and the proper coordination of the various subcontractors and supervision of their work. Furthermore, it retained the authority to stop the work of subcontractors, order changes in their work, and stop any unsafe work practices. Insofar as the masonry work was concerned, F. D. Masonry assumed the same responsibilities as Four Columns had assumed in its contract with the owners. Moreover, F. D. Masonry agreed to supervise and monitor the safety of its workers. It owned and erected the scaffolding that collapsed.

Testimony at trial centered around why the scaffolding collapsed.

Several witnesses testified that there was no support bracing on the scaffolding when it collapsed. There was no testimony contradicting these witnesses' statements.

George Kennedy, the expert witness for plaintiffs, testified that the method of construction of the wall was questionable and "a very poor, very unsafe, bad method of constructing such a long and high wall without any proper bracing." He further testified that the use of the Morgan scaffolding was extremely unsafe and was a poor choice of scaffolding, inasmuch as the scaffolding itself without bracing was unsafe support. Four Columns offered no evidence to rebut Kennedy's testimony.

Jude Rutkowski testified that he was the job supervisor and Four Columns' representative at the project site. His duties as job supervisor were to coordinate and supervise the work of the subcontractors. He had the authority to stop work, to order changes in the work, to stop any unsafe practices, and to initiate, maintain, and supervise all safety precautions. He further testified that for this project there was no one specially designated as being in charge of safety, and no safety meetings were held. Rutkowski also testified that on the morning of the accident, he had left the site to conduct personal business and was not there when the accident occurred; that he was at the site earlier that morning; and that on that morning he observed a machine called a "lull" on the site near the wall that collapsed. The purpose of the lull was to bring materials and mortar to the men who worked on the scaffolding. He stated that he knew the operation of the lull would interfere with the lateral support of the bracing that supported the scaffolding.

George Grizely testified that he was the brick-layer foreman for F. D. Masonry at the construction site. He stated that the bracing was taken off when the men began work at about 7:30 a.m. on the morning in question. He further stated that Jude Rutkowski was at the site at the time the men were working on the wall without bracing on the scaffolding.

Frank Dziadus, president of F. D. Masonry, testified that when he arrived at the project site on the morning of the accident the scaffolding was not braced anywhere nor was it tied to any support or other lateral support. He stated that in order to use the lull the bracing had to be removed. He also stated that Jude Rutkowski was at the jobsite inspecting F. D. Masonry's work on a daily basis. He further testified that there was nothing obstructing Rutkowski's view of the work; neither Rutkowski nor anyone else expressed any criticism regarding the manner in which the work was being performed.

I: FOUR COLUMNS V. PLAINTIFFS KOHUTKO AND RUIZ

■ Four Columns first contends that the trial court erred in directing a verdict for plaintiffs. A directed verdict should be entered only where all of the evidence so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

Plaintiffs filed their claims under the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, par. 60) (hereinafter the Act). In order to prevail under the Act, plaintiffs must show (1) the plaintiff was involved in structural activity, (2) the activity was being performed with reference to a structure, (3) a scaffold or other mechanical device was being used, (4) a defect existed in the construction or use of the device, (5) the defect proximately caused plaintiffs' injury, (6) the defendant had charge of the work, and (7) the defendant wilfully violated the Act's safety standard. *Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 356, 484 N.E.2d 542, 546.

Four Columns in its brief addresses only whether it wilfully violated the Act's safety standard and whether it had control of the work. Our review of the record leaves no doubt that the first five factors, as stated above, were met. Thus, we will only address in detail whether Four Columns wilfully violated the Act's safety standard and whether it had control of the work.

Four Columns first contends that because F. D. Masonry, its subcontractor, had complete autonomy regarding the construction of the wall and the scaffolding, both of which collapsed, it therefore had control of the work for purposes of the Act.

■ For purposes of the Act, it is not necessary that a defendant be in direct charge of the particular operation from which the injury arose if it is in charge of the overall work for the project under construction. (*Johnson v. Commonwealth Edison Co.* (1985), 133 Ill. App. 3d 472, 478, 478 N.E.2d 1057, 1061.) In ascertaining whether one is in charge of work for purposes of the Act, the court often looks to the following factors: (1) supervision and control of work; (2) retention of the right to supervise and control the work; (3) constant participation in ongoing activities at the construction site; (4) supervision and coordination of subcontractors; (5) responsibility for taking safety precautions at the jobsite; (6) authority to issue change orders; and (7) the right to stop work. (133 Ill. App. 3d 472, 478-79, 478 N.E.2d 1057.) A review of the record indicates that every factor set out in the forgoing list was conclusively established by uncontroverted evidence. Thus, we conclude that Four Columns had control of the work.

■ For a wilful violation, it is only necessary that the defendant know, or in the exercise of reasonable care should have known, of the existence of a dangerous condition. *Blake v. Tri-State Crane Service, Inc.* (1983), 114 Ill. App. 3d 1059, 1067, 449 N.E.2d 946, 953.

Four Columns contends the accident was not a wilful violation because the defect arose when F. D. Masonry removed the support bracing without its knowledge. Under the facts of this case, the removal of the bracing without the knowledge of Four Columns does not prevent such removal from being a wilful violation. The court in *Katz v. Shaf Home Builders, Inc.* (1981), 94 Ill. App. 3d 526, 529, 418 N.E.2d 822, 824, states as follows:

"An owner who is in charge of construction may not escape liability by closing its eyes to the defect at the moment of the accident, if the evidence shows that ordinary care in inspection would have uncovered the defect."

■ A review of the record indicates that Four Columns should have known of the defect. Several witnesses testified that the use of the lull required removal of the scaffolding's bracing during its use. On the day of the accident, the bracing was removed to use the lull. However, the bracing was not replaced. Four Columns, as general contractor, should have known that the use of the lull precipitated the removal of the bracing. Thus, as the one primarily responsible for safety at the project site, Four Columns should have taken steps to insure that workers would not be on the scaffolding once the bracing was removed to use the lull. That the use of the lull precipitated the removal of the bracing was common knowledge. Therefore, we conclude that, because Four Columns should have known of the existence of the dangerous condition created by the removal of the bracing, there was sufficient proof of a wilful violation.

■ Four Columns next argues that there was insufficient proof to direct a verdict. A review of the record indicates there was substantial support for a directed verdict. Plaintiffs' expert witness testified that the use of the scaffolding without bracing was dangerous and unsafe and, furthermore, the Morgan scaffolding even used with bracing was unsafe under the conditions in which it was utilized. Defendant did not rebut the expert's testimony. Several witnesses testified that there was no bracing on the scaffolding when it fell. Evidence was introduced that Four Columns was responsible for coordination of safety and that it had no safety meetings. Four Columns admitted that it knew the lull was being used and that the lull interfered with the masons' work during its use. This evidence, in our opinion, is sufficient for a directed verdict.

■ Four Columns next argues that the trial court erred in admitting testimony of other injuries suffered by plaintiff Kohutko. It cites the testimony given by Dr. Strzyz. The record shows that Dr. Strzyz was Kohutko's treating physician. Therefore, to the extent that plaintiff Kohutko's medical records were considered by him in forming an opinion, the testimony based on those records was properly admissible. (*People v. Ward* (1975), 61 Ill. 2d 559, 568, 338 N.E.2d 171, 177.) Moreover, as the trial judge correctly noted, under *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, Dr. Strzyz could rely on plaintiff Kohutko's medical records as a basis for forming his opinion and as a basis upon which he conducted his treatment of Kohutko. We conclude that the trial court did not err in allowing Dr. Strzyz to testify as to other injuries suffered by Kohutko.

■ Four Columns next argues that the trial court erred in permitting testimony concerning Kohutko's need for future surgery as a proper element of damage as well as testimony concerning Kohutko's reason for wishing to avoid surgery. Four Columns did not object to the alleged errors at trial. Thus, it is precluded from raising these issues for the first time on appeal. See *Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 475 N.E.2d 817; *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337.

■ Four Columns next argues that the trial court erred in admitting plaintiffs' exhibit Nos. 44 and 49. It contends that these exhibits, and testimony of plaintiffs given in connection with them, are improper opinion evidence. Plaintiffs' exhibit Nos. 44 and 49 are handwritten estimations of plaintiffs' lost income.

The admission of exhibits into evidence is largely within the discretion of the trial court. (See *Smith v. Sanitary District* (1913), 260 Ill. 453, 103 N.E. 254.) Furthermore, the admission of exhibits into evidence which contain a summary of testimony given is within the discretion of the trial court. Where a proper foundation is laid for the admission of summary evidence, the trial court does not abuse its discretion. *Joseph W. O'Brien Co. v. Highland Lake Construction Co.* (1974), 17 Ill. App. 3d 237, 245, 307 N.E.2d 761, 767.

■ The exhibits introduced were a yearly summary of wages earned by plaintiffs at odd jobs and how much they would have earned at the normal jobs. The record shows that a proper foundation was laid for admission of the exhibits. Thus, we conclude that the trial court did not abuse its discretion. See *Joseph W. O'Brien Co. v. Highland Lake Construction Co.* (1974), 17 Ill. App. 3d 237, 307 N.E.2d 761.

■ Four Columns next argues that the trial court erred in giv-

ing plaintiffs' instruction Nos. 27 and 18A. A judgment will not be reversed on the basis of faulty instructions unless the party complaining of the instructions can show prejudice as a result. *Bender v. Consolidated Mink Ranch, Inc.* (1982), 110 Ill. App. 3d 207, 215, 441 N.E.2d 1315, 1321.

Four Columns contends that the instructions were erroneous because they misled the jury. However, it does not indicate how the instructions misled the jury or how the alleged misleading instructions constitute prejudicial error, nor does our review of the record reveal any prejudicial error from the alleged improper instructions.

## II: FOUR COLUMNS V. F. D. MASONRY

■■■ Four Columns first argues that the jury's findings that it was 95% responsible for plaintiffs' injuries is against the manifest weight of the evidence. It contends the jury's apportionment is improper because F. D. Masonry owned and utilized the Morgan scaffolding, erected and placed the scaffolding, supplied the materials for the bracing, erected the bracing, removed the bracing on the morning of the accident, used the lull that precipitated the removal of the bracing, and promised contractually to provide a safe work place.

The jury's apportionment of damages between joint tortfeasors will not be set aside as being against the manifest weight of the evidence unless all reasonable, intelligent minds would reach a different conclusion or unless it is clearly evident that jurors have reached a wrong conclusion or an incorrect result. *Bofman v. Material Service Corp.* (1984), 125 Ill. App. 3d 1053, 1060, 466 N.E.2d 1064, 1070.

■■■ After a review of the record, we conclude that the jury's finding is not against the manifest weight of the evidence. The record shows that Four Columns, as general contractor, was contractually responsible for safety at the project site, that it had no safety meetings, and that it did not coordinate the project properly. Furthermore, there was evidence that if Four Columns had properly coordinated the project, the collapsed wall would have had permanent lateral support, preventing its collapse. Finally, although we may not agree with the jury's apportionment, we cannot conclude that it is clearly evident that the jury's decision is against the manifest weight of the evidence.

■■■ Four Columns next contends that F. D. Masonry's statements in its closing arguments concerning Four Columns' financial condition constitute reversible error. We note that a review of the record indicates that Four Columns only objected to the statement that the overall contract price was $1,600,000. Thus, it has waived its objections to any other alleged errors in F. D. Masonry's closing state-

ment. *City of Chicago v. Vaccarro* (1951), 408 Ill. 587, 600, 97 N.E.2d 766, 773.

The record shows that the contract between Four Columns and F. D. Masonry was received into evidence. It included the contract price. Considerable latitude of expression on anything that is in evidence must be allowed of counsel. (See *Chicago City Ry. Co. v. Donnelly* (1907), 136 Ill. App. 204.) Thus, we conclude the trial court did not abuse its discretion in allowing this statement in closing argument.

■■ Four Columns next contends that the trial court erred in approving F. D. Masonry's jury instruction No. 3, which reads as follows:

"You must fix the percentage of the damage proved by the evidence to have resulted from wrongful conduct of Four Columns and F. D. Masonry, Inc.

In apportioning the damages you are required to state the percentage of wrongful conduct of Four Columns, Ltd. and F. D. Masonry, Inc. The total of your percentages must add up to 100."

It argues that the instruction was error because the jury does not compare the contribution claimants' conduct with the conduct of the other tortfeasor. Instead, it argues, the jury determines the degree of misconduct attributed to the tortfeasor in causing plaintiffs' injuries. Even assuming the instruction was error, Four Columns has not shown how it was prejudiced by the instruction, nor does our review reveal any prejudice.

■■ Lastly, Four Columns argues that the trial court erred in refusing its request to allow exhibit Nos. 3, 4, and 5 to be examined by the jurors in the jury room. The trial court has considerable discretion in determining whether an exhibit may be taken to the jury room. (*Nowakowski v. Hoppe Tire Co.* (1976), 39 Ill. App. 3d 155, 160, 349 N.E.2d 578, 583.) The trial court's decision will not be disturbed absent the showing of an abuse of discretion to the prejudice of the defendant. *People v. Williams* (1983), 97 Ill. 2d 252, 292, 454 N.E.2d 220, 239.

Exhibit Nos. 3, 4, and 5 constituted the construction contract between Four Columns and F. D. Masonry. The contract was admitted into evidence and pertinent parts of the contract were read to the jury. The trial court determined that because of other confusing and prejudicial items in the entire contract, and because pertinent parts had been read to the jurors, the contract could not be taken into the jury room.

Our review of the contract indicates that the trial court did not

err in determining that examination of the contract in the jury room might confuse the jurors. Thus, we conclude it did not abuse its discretion in this regard.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI and McMORROW, JJ., concur.