JOSEPH SMITH, Plaintiff-Appellant, v. CENTRAL ILLINOIS PUBLIC SERVICE COMPANY *et al.*, Defendants-Appellees.

Fourth District No. 4—88—0170

Opinion filed November 10, 1988.

484

Amiel Cueto and Thomas M. Daley, both of Cueto, Daley, Williams, Moore & Cueto, Ltd., of Belleville, for appellant.

Robert E. Gillespie and Joan T. Hancock, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Springfield, for appellees.

JUSTICE LUND delivered the opinion of the court:

Plaintiff Joseph Smith was injured on February 9, 1982, when he slipped on some ice and slid down a flight of stairs at the Newton Power Plant. He filed a personal injury action on November 30, 1983, against defendants Central Illinois Public Service Company (CIPS) and Sargent & Lundy Architects, an architectural and engineering firm (Sargent), as well as several other defendants. The third and final amended complaint listed only CIPS and Sargent as defendants. This complaint contained seven counts and alleged causes of action against both CIPS and Sargent for wilful violations of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, pars. 60 through 69), negli-

gence, and wilful and wanton conduct. In addition, plaintiff alleged a cause of action for negligent design against Sargent. The circuit court of Sangamon County directed verdicts for defendants on three counts at the close of all the evidence. The jury returned verdicts for defendants on the remaining four counts. Plaintiff appeals. We affirm.

On appeal, plaintiff argues the following errors occurred at trial: (1) the court erred in not directing a verdict against CIPS on the count alleging a wilful violation of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, pars. 60 through 69); (2) the court erred in allowing Sargent's project manager at the Newton Power Plant to testify as an expert witness when he had not been disclosed as such prior to trial; (3) the trial court erred in allowing defendants to introduce evidence concerning the negligence of plaintiff's employer, Transco, Inc.; (4) the court allowed defendants to interject their defenses into the examinations of adverse witnesses called by plaintiff pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1102); (5) the court erred in refusing to allow plaintiff to introduce into evidence the medical report of one of defendants' examining physicians under the exception to the hearsay rule for an admission against interest; and (6) plaintiff was prejudiced by the manner in which the *voir dire* was conducted, such that a new trial should be granted. In order to address the issues, it is necessary that we summarize the facts adduced at trial.

On February 9, 1982, plaintiff was employed as a construction worker at the Newton Power Plant. The plant was owned by CIPS and designed by Sargent. Plaintiff worked for Transco, Inc. (Transco), one of the many contractors hired to construct Unit II, the second phase of the overall power plant project. Plaintiff was injured when he fell down an outdoor metal stairway at the plant. The stairway was part of a system of catwalks and stairways known as a "gallery system." The gallery system was a permanent feature designed to aid in maintenance of the facility. During the later stages of construction, it was also used by construction workers to access their work stations.

Plaintiff was a foreman of a four-man team of sheetmetal workers. The team was engaged in constructing a temporary wooden scaffold on the outside of a precipitator, a large structure that was designed to remove particles from the plant's stack emissions. As the temporary scaffold was completed, the workers would stand on the scaffold while welding sheet metal to the sides of the precipitator to cover the insulation.

On the day of the accident, plaintiff and his work team used the

stairway and catwalk system in order to access their work area. After ascending the stairs and crossing the catwalk, they climbed over a railing and walked approximately 10 feet across a steel beam, and then onto that portion of the temporary scaffold that they had completed. This procedure was followed, without incident, at 8 a.m. and reversed at noon, when they left their work area for lunch. They returned by the same route to their work site after lunch, at 1 p.m. Although it had been snowing lightly in the morning and there was about one inch of snow on the ground from an overnight snowfall, by approximately 10 a.m., it had become a clear, sunny day. On each of the above trips to and from the work area, the stairway was clear and dry.

Back at work following their lunch break, plaintiff and his team were the only people on the side of the precipitator where they were working. One-half hour later, at approximately 1:30 p.m., plaintiff noticed that the scaffold was becoming slick. The temperature had reached about 40 degrees, and the position of the sun in the sky was causing the accumulated snow to melt from an overhanging duct and drip onto the wooden scaffold. As the melted snow ran down, it began to refreeze on shaded areas of the metal surface. The men attempted to sweep away the ice which was forming. At 2 p.m., plaintiff decided the situation was becoming dangerous. The wet weather was interfering with the welding operation by creating an electrical "feedback." So, plaintiff, as foreman, made the decision to stop work in that area for the day.

The men stored their tools and exited the work area by walking across the steel beam, climbing over the metal railing and onto the permanent catwalk. Plaintiff led them across the catwalk, which was in the sun and had no ice on it. However, when plaintiff reached the top of the stairway, which was in the shade, he saw ice on the stairway. He turned to the other workers, saying, "Watch out, these stairs are icy." Plaintiff stepped onto the stairway, then slipped, fell, and slid down the flight of stairs on his back and buttocks. The three men who were with plaintiff went slowly and descended the stairs without incident. Reaching plaintiff at the landing below, they assisted him the rest of the way down to the ground. Only 1 hour and 15 minutes had elapsed between the time they had gone back up the stairway after lunch and the time of the accident.

At the trial, plaintiff called Ronald Ozment, the safety coordinator for CIPS at the Newton Power Plant in 1982, to testify. He was called as an adverse witness pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1102). As

safety coordinator, Ozment coordinated safety-related matters between CIPS and the contractors at the jobsite. There were approximately 10 contractors at the site, and Ozment was to make sure the contractors complied with general safety regulations. Ozment made daily inspections of the jobsite and, if he discovered any unsafe work conditions, he would contact the contractors responsible for that portion of the job. His responsibility was to inform the contractors of any problem he discovered, and the contractors were responsible for taking corrective measures. Regular safety meetings were held once per month between Ozment and the safety representatives of the contractors. Ozment was shown minutes from several of these meetings. The minutes from one meeting contained reminders that winter weather brought with it mud, ice, and cold temperatures, and that the workmen should be prepared for these conditions. Minutes from another meeting indicated that certain pipelines had burst in the cold weather. Ice had formed at some of these locations, and sand had been spread over the ice. The minutes from both of these meetings requested those encountering buildups of ice and snow to report such hazards to the safety department. Ozment repeatedly asserted in his testimony that he was never made aware of icy conditions on the walkways and metal stairways of the gallery system. He further stated that there were no preventive measures implemented prior to a buildup of ice and snow. Rather, hazardous conditions of ice and snow were treated as they developed. Ozment stated that if he discovered hazardous conditions caused by inclement weather or, if hazardous conditions were reported to him, he would meet with the safety representatives of the contractors working at the jobsite. The safety representatives would then decide whether to discontinue work.

Gabriel Prete was the field superintendent for Transco at the Newton Power Plant in 1982. As such, he was Transco's senior company official at the plant. He was also Transco's safety representative. Prete's evidence deposition was read into the record as part of defendants' case. Prete discussed the procedure for determining how a decision was made concerning whether work should be halted because of inclement weather. Prete stated the decision was entirely in the discretion of the union stewards and the foremen. The representatives from CIPS and Sargent would not have a part in the decision whether or not to work. Prete stated that the CIPS and Sargent people were "not allowed to even talk to my men let alone tell them what to do."

William Loftus was Sargent's project manager for the construction of Unit II of the Newton Power Plant. Loftus testified that

Sargent designed the gallery system for the precipitator. Sargent also prepared the specifications for the materials to be used in constructing the gallery system. Loftus explained that the galleries are designed and constructed to respond to various weather conditions. The surface of the galleries were grated, which allowed moisture to fall through the many small openings. Moreover, the tops of the surfaces were serrated, to provide a person with solid grip as he walked.

Plaintiff's third-amended complaint consisted of seven counts, three against CIPS and four against Sargent, as follows: count I—Structural Work Act against CIPS; count II—premises liability negligence against CIPS; count III—wilful and wanton conduct against CIPS; count IV—Structural Work Act against Sargent; count V—premises liability negligence against Sargent; count VI—wilful and wanton conduct against Sargent; and count VII—design negligence against Sargent. Both sides filed motions for directed verdicts during the trial. At the close of all the evidence, the circuit court directed verdicts for both defendants on the wilful and wanton counts (counts III and VI), as well as for Sargent on the premises liability negligence count (count V). The jury found for both defendants on the issue of liability on the remaining four counts.

■ The first issue we address is whether the trial court should have directed a verdict for plaintiff on count I, the cause of action against CIPS for a violation of the Structural Work Act (Act) (Ill. Rev. Stat. 1987, ch. 48, pars. 60 through 69). A cause of action for a violation of the Act consists of seven elements: (1) the plaintiff must have been involved in a construction activity covered by the Act; (2) the activity was being performed with reference to a structure covered by the Act; (3) a scaffold or other mechanical device as defined by the Act was being used in the activity; (4) the scaffold or device was unsafe, or not safely placed or operated; (5) the unsafe condition proximately caused plaintiff's injury; (6) the defendant had charge of the work, as that phrase has been interpreted under the Act; and (7) the defendant wilfully violated the Act. A wilful violation occurs when the defendant knows or, in the exercise of reasonable care, should know of the existence of the dangerous condition. (*Kohutko v. Four Columns, Ltd.* (1986), 148 Ill. App. 3d 181, 186-87, 498 N.E.2d 522, 525-26.) At trial, the arguments focused on elements three, six, and seven. Following argument, the trial court found, as a matter of law, that the stairway where plaintiff was injured was a scaffold within the meaning of the Act. Further, the court determined, as a matter of law, that CIPS had charge of the construction work. However, the court concluded that CIPS did not wilfully violate the Act as a matter

of law. That issue was submitted to the jury. The jury returned a verdict in favor of CIPS on this count.

On appeal, plaintiff argues that CIPS wilfully violated the Act. Plaintiff argues the evidence showed, as a matter of law, the stairway where plaintiff was injured was not safe, and CIPS knew or should have known of the unsafe condition. He argues the testimony of Ronald Ozment, safety coordinator for CIPS, conclusively proves CIPS knew of the icy condition of the stairway. Further, Ozment's testimony indicates he understood the unsafe nature of such a condition. During Ozment's testimony, the following colloquy occurred between plaintiff's counsel and Ozment:

"Q. And, you're aware in February in central Illinois it's [the stairway system] subject to ice and snow and cold, so forth, is that right?

A. Yes.

\* \* \*

Q. Well, what I'm saying is that it is not suitable to be used as a means of ingress or egress if it's covered with ice and snow, isn't that correct, from your experience as a Safety Coordinator?

A. If it was slick, it wouldn't be safe to use.

Q. That's right. And, you were Safety Coordinator, and you were there all the time, is that right?

A. Every day, five days a week.

Q. You were aware that this was being used as ingress and egress, you said that, right?

A. Right.

Q. Apparently, from the safety minutes and from the area from the time of the year you were aware of ice, isn't that right?

A. That's correct.

Q. Nothing was ever done by CIPS or anyone else to prevent this from occurring, is that correct?

A. I don't recall ever having any ice removal procedures."

The above-quoted testimony is used by plaintiff to establish the following propositions: (1) CIPS knew that workmen, including plaintiff, used the stairway system to get to and from their work area; (2) CIPS knew that icy conditions occurred at the power plant during the winter months; and (3) CIPS knew that if the stairway became covered with ice and snow it would not be safe to use. Therefore, concludes plaintiff, the trial court should have found for plaintiff on the third contested element and directed a verdict for him on this cause

of action.

Plaintiff cites two cases to support his arguments. The plaintiff in *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 473 N.E.2d 946, worked as an electrical repairman for a company that had entered into contracts to install and maintain electrical power at a power plant owned by defendant. The power plant had been closed down. On the day of the occurrence, plaintiff was sent to the plant at defendant's request because of flooding. Plaintiff discovered the cause of the flooding, which was an inoperative sump pump located in an ash pit. Plaintiff slipped and fell into the pit while descending a ladder which had become covered with oil carried by the floodwaters. The oil residue had appeared at other times, and defendant was aware of the problem. After a bench trial, the circuit court held for plaintiff and against defendant under the Act. The supreme court upheld the decision. Defendant was aware of the fact that the floodwaters were oily and left an oily residue on the ladder and other surfaces surrounding the pit. The supreme court, thus, found there was evidence to support the finding that defendant had knowledge of the dangerous condition and was guilty of a wilful violation of the Act. *Simmons*, 104 Ill. 2d at 453, 473 N.E.2d at 950.

The second case is *Kohutko v. Four Columns, Ltd.* (1986), 148 Ill. App. 3d 181, 498 N.E.2d 522. Plaintiffs, in *Kohutko*, were injured when scaffolding on which they were standing collapsed. Plaintiffs worked for a masonry subcontractor on a construction project. The subcontractor owned and erected the scaffolding. On the day of the occurrence, certain of the bracing supporting the scaffolding had been removed in order to use a machine called a "lull" that hoisted materials to the workmen on the scaffolding. Plaintiffs filed suit against defendant, the general contractor. The defendant had a representative at the jobsite who had authority over safety matters. However, there were no regular safety meetings between defendant's representative and the subcontractors. The trial court directed verdicts for plaintiffs on the issue of liability under the Act. Defendant appealed arguing, in part, that it did not wilfully violate the Act. The appellate court held defendant should have known of the unsafe condition. The use of the lull necessitated removal of the bracing. The bracing was not replaced following use of the lull on the day of the accident. There was uncontradicted expert testimony that construction activity using improperly braced scaffolding was unsafe. Defendant's representative was present at the jobsite on the day of the accident. He knew the lull was being used and that it required adjustments to the bracing. Because defendant had primary charge of safety at the work site, the court

held it should have required the workmen to be off the scaffolding when the lull was in use. Moreover, this evidence was sufficient to support a directed verdict. *Kohutko*, 148 Ill. App. 3d at 184-85, 187, 498 N.E.2d at 525-27.

CIPS responds to plaintiff's argument in three ways: (1) CIPS did not wilfully violate the Act because it did not and, in the exercise of ordinary care, could not have known of the dangerous condition; (2) plaintiff's injuries were not proximately caused by a violation of the Act; and (3) a directed verdict really should have been granted in favor of CIPS because the stairway where plaintiff was injured was not a scaffold under the Act.

CIPS's direct response to plaintiff's argument is to argue that CIPS did not commit a wilful violation of the Act. CIPS contends that it did not know, nor could it have known, in the exercise of ordinary care, that a dangerous condition had formed on the afternoon of February 9, 1982. Therefore, it was not error for the trial court to deny plaintiff's motion for a directed verdict.

CIPS points to the facts in the record to argue it was not at fault. First, CIPS states that plaintiff relies on insufficient propositions to show CIPS had knowledge that would make it responsible for the icy condition that occurred on February 9, 1982, on a particular portion of the gallery system. CIPS argues the portion of the testimony of Ronald Ozment relied on by plaintiff states only broad generalizations. Ozment agreed that if the stairway used by plaintiff was covered with ice and snow, it would not be safe to use. He also acknowledged that ice and snow occur in the winter months in Illinois. However, CIPS argues this is insufficient to show, as a matter of law, that it could have been aware of the ice on the stairway where plaintiff slipped and fell at the time of the accident on February 9, 1982.

Second, CIPS argues that the facts indicate CIPS could not have known of this particular buildup of ice. Plaintiff testified that he was the foreman of a work crew and that he and his crew were the only ones to travel on February 9, 1982, to the particular area of the plant where they were working. No one else used the stairway that day. Moreover, the buildup of ice occurred over a period of about 1 hour and 15 minutes. The work crew worked all morning without problem. They took their lunch break about noon and used the stairs to leave the area and to return. There was no problem at that time. After lunch, plaintiff decided to halt work because melting snow was interfering with the welding operation and because the area was becoming slick. This was approximately 1 hour and 15 minutes following lunch. Plaintiff approached the stairway, which was in the shade, and noticed

ice. The other portions of the gallery system were not slick, but they were in the sun. He gave a warning to the rest of the crew, but he slipped and fell. Thus, the freezing occurred quite suddenly after the work crew had taken their lunch break, and CIPS should not be held responsible for a dangerous condition that developed so quickly.

Third, CIPS points to the fact that the responsibility for making a decision whether inclement weather conditions were interfering with work lay with the foreman and union stewards. CIPS was not responsible to order the men away from the jobsite because of inclement weather. Gabriel Prete, Transco's job supervisor, stated that the CIPS people were not allowed to even talk with the workmen. Similarly, Ozment testified that he always discussed safety matters by way of a meeting with the safety representatives of the contractors. Plaintiff understood that if inclement weather should interfere with his work, he had the right to leave the work site. In fact, he was exercising this option when the accident occurred. Based on these facts, CIPS contends it did not wilfully violate the Act.

■■ ■ Plaintiff argues he should have been granted a directed verdict. Directed verdicts should only be granted when the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the moving party that no reasonable jury could come to an opposite conclusion. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) To prove a wilful violation of the Act, it is only necessary to show that the defendant knew or, in the exercise of reasonable care, should have known of the existence of the dangerous condition. (*Kohutko*, 148 Ill. App. 3d at 187, 498 N.E.2d at 526.) However, the defendant must actually be at fault; the Act does not contemplate strict liability. (*Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 35, 495 N.E.2d 496, 501.) We conclude that the trial court properly declined to grant plaintiff a directed verdict. We cannot say that, as a matter of law, CIPS should have known of the buildup of ice that occurred quickly on an isolated portion of the gallery system. We find the facts in the instant case distinguishable from the cases cited by plaintiff. In *Simmons*, the supreme court upheld a verdict by the trial court under the manifest weight of the evidence standard. There is no indication the evidence in *Simmons* would support a directed verdict. The facts in the instant case are distinguishable from *Kohutko*. In the present case, CIPS had a safety representative actively implementing safety procedures. Regular monthly safety meetings were held, and the safety minutes reflected defendants' knowledge and concern regarding ice and snow accumulation. However, CIPS safety representative Ronald Ozment testified that he

was never alerted to a hazardous ice condition on the gallery system. It is clear he did not know of the particular buildup of ice which caused plaintiff's injury, as nobody except plaintiff's four-man work crew went to that particular side of the precipitator that day. Moreover, there was testimony that the gallery system was designed to prevent accumulations of ice and snow. In sum, although CIPS was aware of the possibility of a hazardous condition of ice and snow developing, it engaged in safety activities designed to counter the hazard. It was left for the jury to determine whether the particular buildup which occurred on February 9, 1982, was a hazard of which CIPS should have been aware. Because of our holding, we need not respond to the other arguments raised by CIPS regarding the Act.

Plaintiff's next issue concerns the testimony of William Loftus, Sargent's project manager at the Newton Power Plant in 1982. Loftus, a licensed engineer and an employee at Sargent for over 20 years, testified for defendants. He discussed the design and construction of the gallery system. Following this, he was asked his professional opinion regarding the safety of the system. Over objection, Loftus was allowed to give his opinion that the gallery system was designed in the safest manner and complied with all professional standards. Plaintiff argues this opinion was improper because Loftus was never disclosed as an expert pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220).

Supreme Court Rule 220 requires the disclosure of an expert witness "who may be expected to render an opinion within his expertise at trial. He may be an employee of a party ***." (107 Ill. 2d R. 220(a)(1).) The parties are to act in good faith in disclosing the identity of the expert "who is retained to render an opinion at trial," and to allow the substance of his opinion to be discovered. (107 Ill. 2d R. 220(b).) The rule provides a procedure for engaging in discovery once an expert is disclosed. (107 Ill. 2d R. 220(c).) Rule 220 limits the procedure pertaining to "parties or employees of entities whose professional acts or omissions are the subject of the litigation. The opinion of these *** persons may be the subject of disclosure by deposition only." (107 Ill. 2d R. 220(c)(4).) Sargent did not disclose Loftus as an expert witness who would testify at trial. However, plaintiff did take Loftus's deposition. Plaintiff contends this is irrelevant as he was not aware Loftus would give an expert opinion at the time of the deposition. Had he known this, plaintiff states he would have questioned Loftus at the deposition as an expert, rather than a party.

Sargent responds by arguing plaintiff has misinterpreted Rule 220. Sargent states that Loftus was an employee of a party accused

of professional negligence. Under Rule 220, he was subject to discovery by deposition only. Since plaintiff did depose Loftus, defendants argue he should not be heard to complain. Moreover, Sargent adds that Loftus's status as an expert was fully disclosed in the deposition. Also, the deposition made clear Loftus' role as Sargent's engineer in charge of the Unit II project, including its design. Therefore, Sargent concludes Loftus was free to give his professional opinion on the design of the gallery system at trial.

Along with this issue, we have a motion that we ordered taken with the case. The Loftus deposition was not part of the original record on appeal. Defendants moved to supplement the record by adding the discovery deposition of William Loftus. We now grant the motion.

 Rule 220 is fairly new, and there are no cases interpreting the particular question raised here. There is no case which construes Rule 220 in the context of an expert who is an employee of a party, and was, in fact, the employee in charge of the project allegedly defective in design. The nearest analogy to this fact situation is that of the treating physician. Recently, the supreme court discussed the applicability of Rule 220 to treating physicians. (*Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226.) A treating physician is not an expert witness within the meaning of Rule 220. (*Tzystuck*, 124 Ill. 2d at 234.) The supreme court interpreted subsections (b) and (c) of Rule 220 to refer to "witnesses who are engaged for the purpose of giving an expert opinion at trial." (*Tzystuck*, 124 Ill. 2d at 234.) One rationale for excluding treating physicians is that the physician is consulted and obtains his opinion in giving aid to the patient and not for purposes of preparing for litigation. (*Tzystuck*, 124 Ill. 2d at 234.)

> "In this respect, the opinions of treating physicians are similar to those of occurrence witnesses who testify, not because they were retained in the expectation they might develop and give a particular opinion on a disputed issue at trial, but because they witnessed or participated in the transactions or events that are part of the subject matter of the litigation." (*Tzystuck*, 124 Ill. 2d at 234-35.)

Another rationale is that a treating physician's identity is discoverable under Supreme Court Rule 201(b)(1) (107 Ill. 2d R. 201(b)(1)), and there is little threat of being surprised at the identity of a treating physician. *Tzystuck*, 124 Ill. 2d at 238.

These rationales apply in the instant case. Loftus was clearly known as an engineer to plaintiff long before trial because he was the project manager for Sargent at the Newton Power Plant when plaintiff was injured. Thus, the fact that he testified is not a surprise;

rather, that he gave an expert opinion surprised plaintiff. Also, Loftus was not retained as an expert for litigation. Rather, he was testifying because he was intimately involved in the project as an occurrence witness, long before any litigation was even contemplated. Therefore, we hold that a party, or an employee of a party, who is intimately involved in the subject matter of the litigation need not be disclosed as an expert witness pursuant to Rule 220(b)(1).

■ Plaintiff's third issue is that the trial court erred in allowing defendants to introduce evidence concerning the negligence of plaintiff's employer, Transco. Prior to trial, plaintiff filed a motion *in limine* seeking to prohibit defendants from asserting at trial that the conduct of plaintiff's employer, Transco, was the sole cause, or a contributing cause, for plaintiff's injuries. The court allowed the motion with respect to the causes of action based on violation of the Structural Work Act. The motion was denied with respect to the causes of action based on negligence.

The first witness called at trial was Ronald Ozment, safety coordinator for CIPS, and he testified as an adverse witness. Following plaintiff's initial cross-examination, defendants were allowed redirect examination. During redirect examination, counsel for CIPS adduced the name of plaintiff's safety supervisor, Gabriel Prete, and the name of the contractor for which plaintiff and Prete worked, Transco. Later, during defendants' case, Prete's deposition was read into evidence. Plaintiff also directs us to a portion of counsel for CIPS's closing argument in which plaintiff contends that defense counsel blamed Transco for causing plaintiff's injury. It must be noted that defense counsel never mentioned Transco directly, nor did he indicate that others were responsible. He simply argued that defendants were not responsible.

Based on the foregoing portions of the record, plaintiff asserts defendants were permitted to give evidence and argue that Transco was the negligent party responsible for plaintiff's injuries. He asserts the "obvious thrust" of the defense was to place the blame for plaintiff's injuries on Transco and so limit defendants' liabilities. We have examined the record, and we disagree with plaintiff's interpretation. We do not find blatant attempts at shifting the blame for plaintiff's injuries to Transco. On the contrary, the evidence appears to be an attempt by defendants to paint an accurate picture of where the responsibilities lay with regard to inclement weather. CIPS had a safety coordinator at the jobsite, Ronald Ozment. However, he was not allowed to talk to the workmen but was required to work through the safety representatives of the contractors. Gabriel Prete was the supervisor

for plaintiff's employer, Transco. Prete testified that the foremen and stewards made the decision whether to halt work because of inclement weather. Plaintiff was a foreman and was in the process of exercising the option to halt work when he was injured. In this context, the mere mention of Transco and the introduction of Prete's deposition do not seem irrelevant and unfairly prejudicial to plaintiff's case.

Moreover, in cases where contributory negligence is involved, it is permissible to introduce evidence of the liability of a nonparty. The liability of nonparty tortfeasors may be considered in order to determine the extent of plaintiff's responsibility for his injuries. (*Bofman v. Material Service Corp.* (1984), 125 Ill. App. 3d 1053, 1064, 466 N.E.2d 1064, 1072; *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 133-34, 478 N.E.2d 581, 591.) The liability of nonparty tortfeasors may not be considered to limit defendant's liability. (*Bofman,* 125 Ill. App. 3d at 1064, 466 N.E.2d at 1072; *Barreto,* 133 Ill. App. 3d at 133, 478 N.E.2d at 591.) We find the evidence concerning Transco was confined to the proper limits.

■ In his fourth issue, plaintiff asserts defendants were able to interject their defenses during redirect examination of adverse witnesses called by plaintiff. In particular, plaintiff argues the redirect examination of Ronald Ozment by both defense counsel was improper.

We have examined the alleged errors in the record, and we find no prejudicial error committed by defense counsel. Following cross-examination under section 2—1102, the other party may further examine the witness in order to explain or qualify matters brought out on cross-examination. (*Darling v. Charleston Community Memorial Hospital* (1964), 50 Ill. App. 2d 253, 319, 200 N.E.2d 149, 182, *aff'd* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204.) Examining the record shows defendants generally stayed within the proper bounds. Plaintiff questioned the adverse witnesses about the safety procedures CIPS followed when hazards were discovered and what procedures were followed with regard to ice and snow in particular. Plaintiff had pictures of the metal stairways introduced into evidence. He questioned Ozment about his knowledge of whether icy conditions were ever found on the stairways such as to cause grave hazards and require special attention. Defendants' redirect examination generally focused on these topics. When defendants' attorneys asked leading questions, the court sustained plaintiff's objections. The court sustained plaintiff's objections regarding the scope of defense attorney Robert Gillespie's examination on two occasions. Finally, when Gillespie brought out the name of plaintiff's employer, the court gave a limiting instruction re-

garding contributory negligence at plaintiff's request. We find no error.

Plaintiff's fifth issue concerns the medical report prepared by one of defendants' examining physicians. The physician, Dr. F. William Schroeder, examined plaintiff pursuant to Supreme Court Rule 215(a) (107 Ill. 2d R. 215(a)). Dr. Schroeder prepared a report which contained a prognosis arguably favorable to plaintiff. The report was sent to one of defendants' attorneys. Plaintiff acknowledges that he received the report through normal discovery procedures. At trial, plaintiff attempted to use the medical report in his case in chief as an admission against interest. The court refused to permit such use. The court stated it would allow the report to be used only as impeachment if Dr. Schroeder testified contrary to its contents. Dr. Schroeder was not called to testify.

Plaintiff argues the report should have been allowed into evidence under the hearsay exception for an admission against interest by a party. However, the failure to allow the report into evidence does not prejudice plaintiff. The substance of the report discussed plaintiff's injuries and thus concerned the issue of damages. The jury returned verdicts for defendants on the issue of liability and never reached the issue of damages. In this opinion, we affirm the jury's findings. Moreover, case authority in Illinois favors defendants' position that the medical report does not come within the exception for an admission against interest. *Washburn v. Terminal R.R. Association* (1969), 114 Ill. App. 2d 95, 252 N.E.2d 389.

Plaintiff's final issue concerns the manner in which the *voir dire* was conducted. Plaintiff alleges several errors occurred during *voir dire* such that plaintiff was prejudiced and a new trial should be granted. However, plaintiff has not provided us with a transcript, nor has he attempted to create a bystanders report in lieu of a transcript. (See 107 Ill. 2d R. 323(c).) Generally, without a transcript or a suitable substitute for the proceedings in the trial court, the reviewing court will not consider the alleged errors. (*People v. Brown* (1987), 152 Ill. App. 3d 996, 1002-03, 505 N.E.2d 397, 401; *Dukes v. J.I. Case Co.* (1985), 137 Ill. App. 3d 562, 574-75, 483 N.E.2d 1345, 1354, *aff'd in relevant part and rev'd in part sub nom. J.I. Case Co. v. McCarten-McAuliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, 516 N.E.2d 260.) Plaintiff's attorney has attached an affidavit in support of plaintiff's arguments in his brief. However, an attorney's affidavit cannot be used to supplement the record in lieu of a transcript or a bystanders report. (*Silny v. Lorens* (1979), 73 Ill. App. 3d 638, 642, 392 N.E.2d 267, 270; *Vogelsang v. Credit Life Insurance Co.* (1970),

498

119 Ill. App. 2d 67, 72, 255 N.E.2d 479, 482.) We cannot consider the allegations relating to the *voir dire*. In this regard, we grant defendants' motion, taken with the case, to strike the affidavit of plaintiff's attorney.

For the reasons stated above, we affirm the judgment of the circuit court of Sangamon County.

Affirmed.

GREEN, P.J., and KNECHT, J., concur.