THE PEOPLE *ex rel.* THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellant, v. ANTHONY SMITH, JR., Defendant-Appellee.

First District (2nd Division)   No. 1—92—0408

Opinion filed March 8, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellant.

Wein & Associates, P.C., of Chicago (Grace E. Wein and Michael J. Pisani, of counsel), for appellee.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:
The Illinois Department of Transportation (the Department) sued Anthony Smith, Jr., to recover $43,715.40 in damages allegedly caused by a collision between a dump truck driven by Smith and a bridge maintained by the Department. A jury found Smith negligent and awarded $1,700 in damages. The Department appeals, seeking a judgment notwithstanding the verdict or, in the alternative, a new trial on damages or an *additur*. For the reasons that follow, we affirm.

In November of 1980, defendant Smith, a truck driver, purchased a 1971 Henderson truck with a semi-dump trailer. The trailer had a lever to raise and lower the dump, and this lever had a manual lock.

On January 8, 1981, Smith was driving his truck as a leased driver for Cook County Disposal. He picked up a load of refuse from a site at 800 West Division Street and transported it to a dump site at 142nd Street and Dolton Avenue. After dumping his load, Smith returned the dump portion of the trailer to its horizontal position. He

could not recall, however, whether he locked the dump in the down position.

After finishing at the dump site, Smith intended to return to 800 West Division Street. He proceeded eastbound along Dolton Avenue toward the I-94 entrance. Along the way, Smith stopped at a hot dog stand. When he got out of the truck at the hot dog stand, the dump was down.

Somewhere between the hot dog stand and the I-94 overpass over Dolton Avenue, the dump rose up. Unaware that the dump was up, Smith proceeded under the overpass and struck the face of the bridge. The force of the impact separated the truck's front and rear axles and the cab from the trailer. The trailer was so severely damaged that it could never be used again.

Steve Kakavas, a civil engineer for the Department before his retirement, testified that the Dolton Avenue bridge is a multibeam, continuous span bridge running north-south over Dolton Avenue. A beam has three parts, two flanges and a web. The flanges are the top and bottom steel plates of the beam, and the connecting plate is the web, also made of steel. The flanges lie horizontally on the web, and the web stands vertically between the flanges.

The Dolton Avenue bridge has six beams, numbered from west to east. The first beam on the west side is beam number one. This beam is also known as the west fascia beam. Thus, the west fascia beam would be the first beam encountered by eastbound traffic driving under the Dolton Avenue bridge. It is covered by a decorative plate, known as the west fascia plate, to give it a smooth appearance.

The Dolton Avenue bridge was normally inspected yearly. It, along with other bridges, was also inspected after accidents. Kakavas inspected bridges both in annual rotation and after accidents, and part of his duties included providing an estimate of repair costs. He inspected the bridge in question both before and after Smith's accident. In his inspection report of March 11, 1980, before the accident, he noted that the west fascia beam and the beam immediately behind it (the second beam) had their bottom flanges bent. There was also some damage to the web of the west fascia beam. The fourth beam was also bent about three inches out of line. Kakavas noted no damage to the west fascia plate in his 1980 report, although there were some rust holes due to normal wear. The 1980 report did not recommend replacement of the west fascia beam or any other beam. Kakavas estimated in the 1980 report that there was $75,000 worth of damage to the bridge. Kakavas inspected the Dolton Avenue bridge again on January 9, 1981, the day after Smith's accident. In his 1981 report, he noted that both the west fascia cover plate and

the web of the west fascia beam were bent. There was no change in the condition of the second beam, but the fourth beam was then out of line by four inches instead of three inches. The sixth beam also had an additional flange dent. The 1981 report recommended replacement of the west fascia beam.

Kakavas made a third inspection of the bridge on March 18, 1982. In the 1982 report, he noted that the first three beams had been hit and should be straightened. He also noted that the west fascia plate should be removed, but did not recommend again that the west fascia beam be replaced. He noted, however, that the beams were, overall, in worse condition than in the 1980 report. Kakavas again estimated in the 1982 report that repairs to the bridge would cost $75,000.

In order to replace the west fascia beam, a small section of concrete would have to be removed from the center section of the bridge. Then the bolts or rivets on the splice plate on the beam would have to be removed. Traffic would be stopped, the old beam would be lowered, the new beam would be inserted and bolted in, and new concrete would be poured. Replacing the beam would take two or three days.

Straightening a beam, on the other hand, requires only stopping traffic and using blocking and a jack to bring the beam into line. The process takes less than a day.

Kakavas testified that replacing the west fascia beam was necessary, and it was replaced in the fashion described. The Department entered into a contract with Cascade Construction Company to replace the west fascia beam and repair the bridge. The work was completed in 1984. The total cost of replacing the west fascia beam, including all incidental work, was $45,415.40. This included $3,949.17 for engineering work in preparing the plans for the contract for the repair work, and $1,974.58 for the supervisory engineering work. The total included $1,700 for straightening the second beam, which was not impacted in Smith's accident.

The bridge was also examined on the day of the accident by Illinois State Police Trooper Donald E. Lange. Lange prepared an accident report in which he noted that the impact of Smith's trailer dented the bridge beam. In this report, Lange estimated that there had been approximately $1,000 in damages to the bridge. He based this estimate on a price list provided to him, but admitted that he had no training in bridge repair and that his estimate was not based on personal knowledge or any skill or expertise in engineering or bridge repair.

In closing argument, the Department requested only $43,715.40

in damages, the cost of replacing the west fascia beam and repairing the west fascia plate. Recovery of the $1,700 cost of straightening the second beam was not requested.

Before the jury retired to deliberate, the Department requested the court to allow the jury to take all the exhibits admitted into evidence into the jury room. The court denied the request, allowing into the jury room only four photographs showing the damage to the bridge. All of the other exhibits, including the construction contracts and changes, grouping sheets showing the repairs completed and the amounts payable on the contracts, memos and invoices showing costs, payment warrants, and Kakavas's three inspection reports, were not permitted in the jury room.

On September 11, 1991, the jury returned a verdict in favor of the Department and awarded $1,700 in damages. A month later, the Department filed its post-trial motion, requesting a judgment notwithstanding the verdict or, in the alternative, a new trial on damages or an *additur*. On January 3, 1992, the circuit court denied the motion. On January 29, 1992, the Department filed a timely notice of appeal.

I

■ The Department first argues that it is entitled to a judgment notwithstanding the verdict (judgment *n.o.v.*) because the amount of damage caused by Smith was uncontradicted and unrebutted. Smith responds that there is evidence to support the jury's damage award and that, therefore, judgment *n.o.v.* is inappropriate.

The standard for entering judgment *n.o.v.* is well established:

> "Directed verdicts or judgments *n.o.v.* ought to be entered only in those cases in which all of the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors movant so that no contrary verdict based on that evidence could ever stand." (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 139-40, 554 N.E.2d 223, 226, citing *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.)

This is clearly a very difficult standard to meet, limiting the power of the circuit court to reverse a jury verdict to extreme situations only. Where there is evidence to support the jury's damage award, a circuit court will properly deny a motion for judgment *n.o.v.*

In this case, despite the Department's protestations to the contrary, the amount of damages was in question. The estimate for needed repairs to the bridge in 1980, before the accident, was $75,000. The same inspector reported in 1982, after the accident, an estimate for needed repairs to the bridge of $75,000. A reasonable jury could

have concluded that there was no additional significant damage to the bridge between 1980 and 1982.

Further, there were inconsistencies in the Department's records that support the jury's verdict. A report made in 1981, immediately following the accident, stated that the west fascia beam should be replaced. No action was taken then, and the report made in 1982 stated that the same beam merely required straightening at that time. These two reports support a jury's conclusion that an expenditure of $43,715.40 to replace the beam was unnecessary. The jury had before it evidence that the straightening of another beam cost $1,700.

Finally, the police inspector examining the scene on the day of the accident, Trooper Lange, estimated the amount of damage caused by defendant to be around $1,000. While Lange admitted he had no special expertise, this evidence was before the jurors, and it was for them to determine the weight to give it.

The evidence in the case thus supports a wide range of jury verdicts. When examined in the light most favorable to Smith, it cannot be said that the evidence so overwhelmingly favors the Department that the $1,700 damage award in this case could never stand. Judgment notwithstanding the verdict was therefore inappropriate.

## II

The Department next argues, in the alternative, that it is entitled to a new trial on damages because the jury verdict was contrary to the manifest weight of the evidence. It asserts that the jury's verdict on damages should be set aside because the jury ignored the proved damages and the amount awarded bears no reasonable relationship to the loss suffered; that the verdict on damages should be set aside because the circuit court erred in refusing to let the jury take trial exhibits to the jury room during deliberations; and that a new trial on damages only is appropriate because the jury's verdict on liability is supported by the evidence, the questions of liability and damages are separate and distinct, and the error in awarding damages did not affect the question of liability. Smith responds that the jury's damage award should be upheld because it is supported by the evidence; that it is properly within the judge's broad discretion as to which trial exhibits may accompany the jury during deliberations; and that since there was no error in the jury's damage award, a new trial on damages is inappropriate.

## A

■ The standard for an award of compensatory damages under Illinois law is whether a reasonable jury could have awarded the

damages it did. (See *AMPAT/ Midwest, Inc. v. Illinois Tool Works, Inc.* (7th Cir. 1990), 896 F.2d 1035, 1044.) Considering the conflicting evidence and the contradictory testimony of witnesses in this case (see I above), it was reasonable for the jury to act as it did. There is therefore no need to depart from the general rule that damages are within the jury's discretion. *Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 407, 485 N.E.2d 4, 6.

The Department cites *Hollis* for an exception to the general rule, which holds that a reviewing court will overturn a jury verdict when damages are manifestly inadequate because the proven elements of damages were ignored, or if the amount awarded bears no reasonable relationship to the loss suffered by the plaintiff. (*Hollis,* 108 Ill. 2d at 407; *Kern v. Uregas Service of West Frankfort, Inc.* (1980), 90 Ill. App. 3d 182, 195, 412 N.E.2d 1037, 1047.) The exception, however, is inapplicable in this case, since the damage caused by the accident was highly contested.

The burden was on the Department to prove its damages to a reasonable degree of certainty. (*B&Y Heavy Movers, Inc. v. Fluor Constructors, Inc.* (1991), 211 Ill. App. 3d 975, 987, 570 N.E.2d 777, 785.) Presumably, the jury awarded damages in an amount of which it was reasonably certain. This figure is not arbitrary and cannot be said to be unreasonable.

Mere dissatisfaction on the Department's part does not require a new trial on damages. The appellate court in *Montgomery v. City of Chicago* (1985), 134 Ill. App. 3d 499, 503, 481 N.E.2d 50, 53, stated:

> "The mere fact that the verdict is less than the claimed damages does not necessarily mean the award is inadequate *** since the jury is free to determine the credibility of the witnesses and to assess the weight accorded to their testimony." (*Montgomery,* 134 Ill. App. 3d at 502.)

The jury had discretion to resolve factual questions based upon the evidence and witnesses presented at trial. A reasonable verdict, albeit for less than the plaintiff requested, which relates to the damage the plaintiff suffered as described by contradictory evidence, may not be set aside on grounds of inadequacy. In *Gruidl v. Schell* (1988), 166 Ill. App. 3d 276, 283, 519 N.E.2d 963, 968, this court stated:

> "Awarding a small amount of damages is not the same as disregarding proven elements of damages and it has never been a reason for reversal as such. *** [A]n award of damages is not palpably inadequate just because it was less than generous." *Gruidl,* 166 Ill. App. 3d at 283.

The cases cited by the Department on this issue (*Kern,* 90 Ill. App. 3d 182, 412 N.E.2d 1037; *Corbetta Construction Co. v. Lake*

*County Public Building Comm'n* (1978), 64 Ill. App. 3d 313, 381 N.E.2d 758; *Davis v. Yellow Cab Co.* (1971), 133 Ill. App. 2d 190, 273 N.E.2d 35) all involve cases where juries improperly rendered verdicts because the evidence presented was undisputed. These cases are inapplicable here, because a legitimate controversy regarding the appropriate amount of damages existed. A defendant need not introduce evidence of his own in order to dispute the evidence presented by a plaintiff. In fact, in this case the court sustained two of Smith's objections to the Department's closing argument, where the Department improperly implied that Smith had a burden to introduce evidence on the issue of damages.

Although another jury might have decided differently, we cannot conclude that the jury's verdict was against the manifest weight of the evidence.

### B

■ The Department next argues that the jury's verdict on damages should be set aside because the circuit court abused its discretion when it decided to keep exhibits out of the jury room. The Department claims it was prejudiced by this action. Smith responds that since the entire decision was within the discretion of the circuit court, any reasonable rationale for disallowing the exhibits into deliberations is sufficient, and there was a reasonable rationale here. Further, Smith asserts, the jury had already heard the contents of the exhibits during the trial, so any error was essentially harmless.

Under section 2—1107(d) of the Illinois Code of Civil Procedure, "[p]apers *** received in evidence *** *may* be taken by the jury to the room for use during the jury's deliberations." (Emphasis added.) (735 ILCS 5/2—1107(d) (West 1992).) This permissive language certainly implies a degree of discretion on the part of the circuit court, and the appellate court has held that "[t]he trial court has considerable discretion in determining whether an exhibit may be taken to the jury room." (*Kohutko v. Four Columns, Ltd.* (1986), 148 Ill. App. 3d 181, 190, 498 N.E.2d 522, 528.) It may be an abuse of discretion if the circuit court's decision to keep exhibits out of the jury room prejudices a party (see *Kohutko*, 148 Ill. App. 3d at 190), but the court held in *Kohutko* that it was not an abuse of discretion in that case to keep a construction contract out of the jury room because it might confuse the jury. (*Kohutko*, 148 Ill. App. 3d at 191.) The situation in this case is similar to that in *Kohutko*. The circuit court prohibited the jury from taking complicated structural reports, construction contracts, and warrants to the jury room. It was well within its discretion in doing so, the Department's arguments to the contrary notwithstanding.

## C

■ The Department next argues that, if the jury's verdict on damages is set aside, a new trial on damages is appropriate because the jury's verdict on liability is supported by the evidence, the questions of liability and damages are separate and distinct, and the error in awarding damages did not affect the question of liability. Smith responds that because there was no error in the jury's damage award, a new trial on damages is inappropriate.

Since we have concluded that there was no error in the award of damages, we need not address this argument.

## III

The Department finally argues, in the alternative, that it is entitled to an *additur* in the amount of $42,015.40 because the damages awarded are manifestly inadequate, and proper damages are specific, certain, and easily calculated. Smith responds that the use of *additur* is extremely limited, confined to cases where damages are undisputed, and that the dispute over damages in this case renders *additur* inappropriate.

As with the Department's argument that a new trial on damages alone is appropriate, we need not address this argument because we have concluded that there was no error in the award of damages.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

SCARIANO and McCORMICK, JJ., concur.