Marie **KRAMER, et al.,** Plaintiffs–Respondents,

v.

**CHASE RESORTS, INC.,** Defendant–Appellant.

No. 54572.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 5, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1989.

Jim J. Shoemake, Gino F. Battisti, St. Louis, for defendant-appellant.

James E. Hullverson, Stephen H. Ringkamp, St. Louis, for plaintiffs-respondents.

STEPHAN, Judge.

Chase Resorts, Inc., d/b/a Lodge of the Four Seasons and d/b/a Four Seasons Marina, appeals from the judgment entered against it in favor of respondents Marie and William Kramer, husband and wife. Pursuant to jury verdict in their favor, the court awarded Mrs. Kramer $600,000 for her personal injuries, Mr. Kramer $50,000 for his personal injuries and $50,000 for loss of consortium in their negligence action against appellant; Robert Whalen, appellant's employee; and also Robert Ahrens d/b/a Dock Right Dock Company, a dock manufacturer. The Kramers were injured when the snow-laden roof of a boat dock collapsed on them. The boat dock was part of the marina at the Lodge of the Four Seasons owned by Chase Resorts at the Lake of the Ozarks, Missouri. Robert Ahrens, d/b/a Dock Right Dock Company is not a party to this appeal, the jury having found in his favor. Respondents did not submit their case against appellant's employee Robert Whalen. Chase Resorts appeals the trial court's refusal to instruct on comparative fault and the damage award. We reverse and remand the judgment of the trial court.

The Kramers had lived in a condominium at the Lake of the Ozarks since 1982. They leased two slips at a dock owned by appellant. The dock itself was a wooden floating structure. Long wooden or metal platforms called fingers extended about forty feet in length from the dock. These ran alongside the slips for the boats. The fingers normally floated about one foot to one and one-half feet above the water.

On February 26, 1984, a heavy snow fell in the area throughout the day. By five p.m., the snow was deep enough that the Kramers cancelled their plans for dining out with their friends, the Sebastians, because road conditions had deteriorated and become hazardous. Around midnight, the Sebastians, who lived year-round on their boat and maintained a slip at the same dock as the Kramers, called the Kramers to tell them that water was coming over the fingers of the dock and that water was rising around the Kramers' dock box containing various boating and fishing equipment.

Captain Paul Graning, manager of the Four Seasons Marina, also learned around midnight, after telephone calls to him by both the night watchman and hotel operator, that the fingers of the dock were sinking. Within fifteen to thirty minutes, he dressed and arrived at the dock to survey the situation. He encountered the Sebastians at the dock and warned them to get off the dock. He discovered the weight of the snow which had accumulated on the dock roof was causing the fingers to submerge into the water. He immediately left the dock to organize a crew for snow removal.

In the interim, the Kramers had trudged through the snow and arrived at the dock. The water had crept up over the fingers of the dock, about one foot to one and one-half feet above the waterline, according to Mrs. Kramer. Both the Kramers recognized there was a problem with the dock and that the dock was sinking. Their dock box was located about in the middle of the finger and was already sitting in about three or four inches of water. The far ends of the fingers were at least one foot under water.

About five minutes after the Kramers arrival on the dock, its roof collapsed under the weight of the snow. Injuries to Mrs. Kramer's left shoulder and abdomen eventually required surgery. Mr. Kramer sustained less severe injuries than his wife but did sustain a fracture of his twelfth thoracic vertebra.

Appellant's first point contends the trial court erred in refusing its request that the jury be instructed on comparative fault. Appellant states whether a reasonable person would be put on notice that some harm associated with the snow-covered roof might occur was a question for the jury. Appellant asserts the trial court erred in concluding that the Kramers could anticipate the sinking of the dock, but not the collapse of its roof. The main thrust of appellant's argument is that the Kramers'

knowledge of the generally dangerous condition of the dock because it was sinking constituted knowledge of the danger actually encountered (a snow-laden dock roof which collapsed), and thus their entry onto the dock warranted submission to the jury of a comparative fault instruction. Appellant argues the evidence established the Kramers failed to use ordinary care for their own safety because they entered onto the dock knowing it to be in distress, knowing it had sustained prior damage and knowing it was sinking under weight of a heavy snow.[1]

This case, tried in 1988, is controlled by the comparative fault doctrine adopted in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983). Under *Gustafson*, plaintiff's conduct in negligence cases is to be measured by the definition of fault provided in the Uniform Comparative Fault Act. 661 S.W.2d at 15–16. The act provides in part that "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery." *Unif. Comparative Fault Act* § 1(a), 12 U.L.A. at 41. (Supp.1989). The act defines "fault" to include "acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others" and also "unreasonable failure to avoid an injury or to mitigate damages." *Unif. Comparative Fault Act* § 1(b). "Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault." *Id.*

"Legal requirements of causal relation" has generated much discussion. The National Conference of Commissioners on Uniform State Laws' Comment to Section 1 of the Uniform Comparative Fault Act states:

For the conduct stigmatized as fault to have any effect under the provision of this Act it must have had an adequate causal relation to the claimant's damage.

This includes the rules of both cause in fact and proximate cause.

"Injury attributable to the claimant's contributory fault" refers to the requirement of a causal relation for the particular damage. Thus, negligent failure to fasten a seat belt would diminish recovery only for damages in which the lack of a seat belt restraint played a part, and not, for example, to the damage to the car.

12 U.L.A. at 42 (Supp.1989).

One distinguished scholar on comparative negligence has commented, "[i]n order for plaintiff's negligence to be material and thus subject to comparison with that of defendant, plaintiff's negligence must have been a cause in fact or must have at least contributed to his injury." V.E. Schwartz, *Comparative Negligence* § 4.1 at 78 (2nd ed. 1986) [hereinafter cited as *Schwartz*.]

The principle that proximate cause and causation in fact are properly within the jury's domain is long established and well-entrenched within Missouri law. *See, e.g., Laughlin v. Kansas City Southern Ry.*, 275 Mo. 459, 205 S.W. 3, 5 (1918). The Western District has observed that, in order to make a submissible case of contributory fault in the pre-*Gustafson* sense of contributory negligence, evidence of a causal connection between a plaintiff's alleged negligence and resultant damage was required. *Wittmeyer v. Braby*, 706 S.W.2d 263, 264 (Mo.App.1986) (citing *Heberer v. Duncan*, 449 S.W.2d 561, 563 (Mo.banc 1971)). Relying upon *Acculog, Inc. v. Peterson*, 692 P.2d 728 (Utah 1984), the court in *Wittmeyer* further observed that the advent of comparative fault has not eliminated this principle. 706 S.W.2d at 265.

With this principle in mind, we examine contributory negligence as it existed before *Gustafson* for guidance in determining when plaintiffs' actions constitute a degree of fault warranting submission of a comparative fault instruction.

---

1. Appellant also argues the Kramers remained on the dock despite having been warned by a marina employee to get off. The Kramers testified they were given no warning. While the deposition of the marina employee supports appellant, the record does not reflect that portion of the deposition was read to the jury or received as evidence. We, therefore, decline to consider this portion of appellant's argument.

Our Missouri Supreme Court had adopted the two types of contributory negligence enunciated in Restatement (Second) of Torts § 466 (1965). *Bledsoe & Northside Supply and Development Co.*, 429 S.W.2d 727, 732 (Mo.1968); *Siteman v. Woodward–Clyde & Associates, Inc.*, 503 S.W.2d 141, 146 (Mo.App.1973). Section 466 of the Restatement provides:

> The plaintiff's contributory negligence may be either (a) an intentional and unreasonable exposure of himself to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know, or (b) *conduct which*, in respect other than those stated in Clause (a), *falls short of the standard to which the reasonable man should conform* in order to protect himself from harm.

(Emphasis added.)

■ The question is whether Chase Resorts made a submissible case of the Kramers' contributory fault. There was substantial evidence in this case that the Kramers recognized the floating dock was obviously distressed, with portions of the fingers submerged in water. We believe that the question whether the Kramers' conduct fell short of the standard to which the reasonable man should conform in order to protect himself from harm was properly within the province of the jury to answer. Under comparative fault, the jury is allowed to assess defendant's fault for failure to maintain the premises in a reasonably safe condition and plaintiff's fault in failing to use ordinary care in discovering an obvious danger. *Hefele v. National Super Markets, Inc.*, 748 S.W.2d 800, 802 (Mo.App.1988). The adoption of comparative fault requires the jury be given the responsibility of assessing the relative fault of the parties in tort actions. *Patton v. May Department Stores Co.*, 762 S.W.2d 38, 40 (Mo. banc 1988); *Cox v. J.C. Penney Co.*, 741 S.W.2d 28, 30 (Mo. banc 1987).

We reject the Kramers' assertion that absolutely no evidence showed that they knew or should have known that the roof of the boat dock would collapse. Respondents state that their knowledge of the general condition of snow on the roof and water creeping over the edge of some of the fingers of the slip does not supplant evidence that they had absolutely no knowledge, actual or constructive, of the danger *actually* encountered, the snow-laden dock roof which collapsed. In support of their position, the Kramers rely primarily on *Burns v. Schnuck Markets, Inc.*, 719 S.W.2d 499 (Mo.App.1986), and also *Davidson v. International Shoe Co.*, 427 S.W.2d 421 (Mo.1968).

Their reliance is misplaced. In *Davidson* the plaintiff stepped on a stair which tilted, causing the fall. There was no evidence that, had plaintiff looked, he would have been aware of the danger of the step tilting. In *Burns* a plaintiff wearing high-heeled shoes fell when the wobbly wheel of the grocery cart she was pushing abruptly stopped. These two cases represent instances in which a person could see *the* general condition, but still not be alerted to *a* particular danger arising from the observable general condition.

Here, the general condition of the dock was one of obvious distress. The floating dock was partially submerged in water. Common sense dictates that, a *floating* dock should, in fact, float, and that excessive weight on it would cause it to sink. Although the Kramers were not alerted to the particular danger, the collapse of the snow-laden roof, there was substantial evidence that a reasonable person would be alerted to *a* danger with the partial submersion of the floating dock.

During oral argument the Kramers' counsel drew a parallel between the respective burdens shouldered by plaintiffs and defendant. The Kramers' counsel emphasized that in order to make a prima facie case of Chase Resorts' negligence, plaintiffs had to establish that Chase Resorts, in the exercise of ordinary care, knew or should have known that the snow-laden dock roof would collapse. They state that Chase Resorts, likewise, carried the same burden to establish the Kramers' negligence in order to be entitled to a comparative fault instruction.

■ In determining foreseeability for the purpose of defining duty, it is immateri-

al that the *precise* manner in which the injury occurred was neither foreseen nor foreseeable. *Pierce v. Platte–Clay Electric Cooperative, Inc.,* 769 S.W.2d 769, 776 (Mo. banc 1989). Foreseeability is established when a defendant is shown to have knowledge, actual or constructive, that there is some probability of injury sufficiently serious that an ordinary person would take precautions to avoid it. *Id.* The rule has been stated that it is "unnecessary that the party charged should have anticipated the very injury complained of or anticipated that it would have happened in the exact manner that it did." *Gaines v. Property Servicing Co.,* 276 S.W.2d 169, 174 (Mo.1955). Just as this rule is the measure by which the negligence of the defendant is judged, we believe it to be an appropriate measure of plaintiff's contributory fault.

■ The Kramers have emphasized throughout their argument that they were not at fault because under traditional notions of contributory negligence, their negligence, if any, was not a proximate cause of the injury or that they were not negligent with respect to the particular hazard that injured them. This narrow construction of foreseeable risk which the Kramers advocate harkens back to the general rule that a negligent plaintiff was not barred from recovery when his failure to exercise reasonable care for his own safety resulted in injury from a different "risk" or "hazard" than that to which he negligently exposed himself in the first place. *See* Restatement (Second) of Torts § 468 (1965). However, this rule developed largely to escape the harsh result under the traditional application of contributory negligence where defendant's successful assertion and proof of plaintiff's contributory negligence totally barred any recovery by plaintiff. *Schwartz, supra,* at 86–87. We believe the advent of comparative fault renders this safety net for otherwise culpable plaintiffs obsolete.

■ Sound policy reasons underscore our determination that a comparative fault instruction should have been given. First, under comparative fault, the jury can still find defendant's negligence as the sole proximate cause and not be required to apportion damages at all. Second, widespread adherence to comparative negligence allows a more evenhanded treatment of both plaintiffs and defendants. *Earll v. Consolidated Aluminum Corp.,* 714 S.W.2d 932 (Mo.App.1986), acknowledges the policy considerations underlying comparative fault. Judge Carl R. Gaertner expressed them as follows:

[T]he concepts underlying the adoption of the doctrine of comparative fault are directed toward the elimination of the inequities inherent in legal doctrines which irrationally imposed total responsibility upon one party for the consequences of the conduct of both parties. Accordingly, where there is evidence that the conduct of both parties combined and contributed to cause damage, the fact finder should not be precluded from comparing the respective contributions toward such causation made by each. Because the benefits flowing from such an approach are mutual, its application should not be determined by any one party. Rather, the determinative factor is the evidence.

714 S.W.2d at 936.

Guided by the foregoing authorities, we hold that the question whether the Kramers' actions constituted "an unreasonable failure to avoid an injury" by going on a dock they observed to be partially submerged in water, and, if they behaved unreasonably, the extent to which their conduct caused their injuries was for the jury to decide.

Although we decide that the trial court's action in refusing to instruct on comparative fault was erroneous under the evidence presented in this case, we do not address the Kramers' attack on the comparative fault instruction actually tendered by Chase Resorts. We leave it to Chase Resorts on remand to present the trial court with an instruction free of a disjunctive submission or other possible problems.

Appellant's second point contends the trial court erred in denying its motion for new trial on the ground the damages awarded

were excessive and unsupported by the evidence. Chase Resorts argues that the lack of a comparative fault instruction caused the jury to become biased and prejudiced, prompting an excessive award.

 Whether or not comparative fault is submitted, the jury must determine damages under identical instructions on the amount of compensatory damages. *See* M.A.I. 4.01 and M.A.I. 37.03. In the comparative fault situation, M.A.I. 37.03 specifically directs the jury not to reduce the amount of damages by any percentage of fault that may be assessed to plaintiff. The jury then assesses a percentage of fault to plaintiff and the court reduces the damages accordingly. Here, the trial court's failure to submit comparative fault precluded the jury's second step of assessing a percentage of fault to the plaintiffs.

In view of the severity of the injuries suffered by both plaintiffs, particularly those of Mrs. Kramer which required several hospitalizations and surgical procedures, we cannot hold that the jury's award of damages was excessive. Accordingly, we would be inclined to remand for retrial solely on the issue of what percentage of fault, if any, should be attributed to the Kramers. We note, however, that in *Phillips v. Lively*, 708 S.W.2d 369 (Mo.App. 1986), our brethren in the Western District made the observation that:

> In comparative fault cases, the jury is instructed to determine the percentages of fault and the amount of damages. The interrelationship of fault and damages is apparent on the face of the instructions, and it would be a rare case in which a jury would not consider the effect of its determination of percentages of fault in terms of the damages to be eventually awarded to the plaintiff. The issues are undeniably "blended and interwoven."

*Id.* at 373.

While the concept that the amount of damages and percentages of fault are "blended and interwoven" is somewhat contrary to the jury instructions that the issues are to be separately determined, we must accept the practical reality of the observation. Nevertheless, a new trial on all the issues is not necessary. *Hoyer v. Laclede Gas Co.*, 759 S.W.2d 242, 245 (Mo. App.1988). Therefore, we reverse and remand with directions that plaintiffs elect either: a retrial where the damage award to the Kramers remains unchanged but the jury is instructed after reconsideration of the evidence to determine what percentage of fault, if any, is attributable to the Kramers; or a retrial on all issues.

The judgment is reversed and remanded for trial with directions.

SMITH, P.J., and SATZ, J., concur.