743 F.Supp. 681 (1990)
Jackie PHILLIPS, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. S88-40C.
United States District Court, E.D. Missouri, Southeastern Division.
August 7, 1990.
*682 C.H. Parsons, Jr., Parsons, Mitchell, Wilson and Satterfield, Dexter, Mo., for plaintiff.
Eric T. Tolen, Asst. U.S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff initiated this action against the United States of America after he was hit by a car driven by a member of the United States Corps of Engineers. Plaintiff has filed a one-count complaint against the United States pursuant to the Federal Tort Claims Act. The case was tried before this Court sitting without a jury on February *683 28, 1989 and March 1, 1989. Due to some evidentiary problems, the matter was not finally submitted to this Court for its determination until April 1, 1990. This Court, having now considered the pleadings, the testimony of the witnesses, the documents in evidence and the stipulation of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52.

FINDINGS OF FACT
Plaintiff was self-employed as the operator of an auto repair business and service station located in Wayne County, Missouri. On May 25, 1984, around 1:30 p.m., plaintiff was called to a location on Highway "D" about three miles north of plaintiff's garage to do repair on a dump truck owned by T.J. Moore which had stalled while traveling up Walter William Hill, a steep hill three miles south of Shook, Missouri. At the location where the truck was stalled, the highway was a two-lane blacktop surfaced road with no shoulders on either side. The front of the truck was facing uphill and it was stalled in the southbound lane of Highway "D".
Plaintiff and his associate Junior Williams traveled to the site of the stalled truck. Plaintiff got out of his car and walked to the front hood of the dump truck. Junior Williams parked the car in which he and plaintiff had been riding approximately thirty feet in front of the truck and walked back to the dump truck. Plaintiff did not tow the truck off of the Highway before he began working on the truck, but simply worked on the truck while it was stalled in the middle of the road.
Highway D has one southbound lane and one northbound lane. The road leading to the point of collision was curvy from both directions. Because the stalled truck was parked in the entire southbound lane, other vehicles travelling south on Highway D were required to pass by entering the northbound traffic lane. The roads were dry, it was daylight, and there was good visibility.
Plaintiff was in front of the stalled truck. He had the hood raised and was working on the truck engine. A 1981 one-ton Chevrolet truck owned by the Corps of Engineers and operated by Terry Whitmer, a civilian employee of the Corps of Engineers, passed the stalled truck in a southbound direction and stopped several feet in front of the stalled truck with the rear of the Corps truck facing the front of the stalled truck. He was parked on the same steep uphill incline as the stalled truck. He stopped to see if he could offer any assistance in getting the truck started and removed from the southbound lane. Terry Whitmer was acting within the scope of his employment when he engaged in these actions.
Whitmer left the cab of the truck to offer assistance to T.J. Moore. Whitmer left the Corps truck unattended and stopped on the steep incline. T.J. Moore was inside the stalled truck holding the brake while the truck was being worked on. Mr. Whitmer was intending to get a tow chain out of the bed when the government truck slowly rolled backward.
Mr. Moore, who was still sitting in his truck with his foot on the brake, saw the government truck backing toward them and yelled a warning, but the truck rolled back into Mr. Moore's truck pinning plaintiff between the two trucks. When the Corps truck rolled backward, a portion of a trailer hitch on the rear bumper of that truck struck the front bumper of the stalled truck. Plaintiff's leg was caught between the front bumper of the stalled truck and rear bumper of the Corps truck. He had turned his upper body around so that he was facing the Corps truck, as if in an attempt to push the truck off of him, and as a result he injured his back. The distance between the two trucks was about four inches.
Plaintiff was pinned between the two vehicles for a very short period of time until the trucks were separated. Moore backed his truck up so that plaintiff could be released. Also, Whitmer reentered his truck and held it so that plaintiff could be *684 extricated. Plaintiff was trapped for roughly twelve to fifteen seconds. After plaintiff was extricated, he fell over to the shoulder of the road and complained that his leg was hurt. He complained immediately of pain but did not seek medical attention at that time because he believed that he would probably be fine without medical treatment. He pulled his pant leg up and there was no red mark, blood, or bruise on his leg. He did not notice any problems at that time with his back. When asked by Mr. Whitmer whether he wanted an ambulance, plaintiff's response was "No, I'm okay." The trailer hitch on the government truck damaged Moore's front bumper.
During the remainder of that day and through that night plaintiff began to feel worse and he went to Lucy Lee Hospital Emergency Room the next day, May 26, 1984. His primary complaint at that time was pain in his right leg. He was examined, treated and released with instructions regarding care for his leg and to remain on bed rest. He was also instructed to see Dr. S.L. Gernstetter if he continued to have problems. X-rays were taken which showed only a bruised right leg.
Plaintiff did continue to have problems with his leg and began to experience low back pain. Thus, plaintiff went to see Dr. Gernstetter on May 30, 1984 with complaints of low back and leg pain. On June 7, 1984, plaintiff again saw Dr. Gernstetter and had complaints of back pain. Dr. Gernstetter put him on a lifting limit of ten pounds and told him to do no stooping or bending over.
Plaintiff was referred to Dr. A.D. Brookreson, and on June 20, 1984 he saw Dr. Brookreson with complaints of back pain in the lumbar spine area. Dr. Brookreson treated plaintiff conservatively with pain medication and limitation of activities. Plaintiff continued to see Dr. Brookreson on several occasions throughout the next year. He was last seen by the Doctor on April 10, 1985. On that date, Dr. Brookreson reviewed a CAT scan taken of plaintiff the week before, and diagnosed plaintiff as having a bulging disc at L5-S1 level of his back. He advised plaintiff to refrain from heavy lifting an to remain off work for eight to twelve weeks. Dr. Brookreson further noted that plaintiff's condition will be permanent. He also believed that plaintiff's injuries were directly related to the accident of May 25, 1984.
Plaintiff continued to experience back pain. He remained off work for about one year during which he limited his activities and took pain medication. He did not seek additional medical attention until October 6, 1986 when he saw Dr. Gordon W. Eller, an orthopaedic surgeon. Dr. Eller diagnosed plaintiff's problem as an old fracture of the apophyseal joint at the L4-L5 level and L5-S1 level of plaintiff's back. The X-rays showed a possible ruptured disc and there was probably an injury to the facette joint. He provided conservative treatment to plaintiff including medication, a facette joint injection and physical therapy, and this treatment helped to relieve plaintiff's pain. It did not, however, cure the problems.
In Dr. Eller's opinion, plaintiff's back problems were caused by the accident of May 25, 1984, when plaintiff was pinned between the Corps of Engineers truck and the stalled truck. Dr. Eller reaches this conclusion on the basis of the history given by plaintiff to him, as well as the x-rays taken October 6, 1986 and October 8, 1986 at St. Francis Hospital in Cape Girardeau, Missouri. It is Dr. Eller's opinion that plaintiff has a permanent partial disability of twenty percent in the lumbar spine and thus the body as a whole.
At the request of defendant, plaintiff was examined by Simon Horenstein, a neurologist. Dr. Horenstein believed that there was no evidence that plaintiff had a fracture which was causing his pain. He believed that plaintiff had degenerative arthritis. He also believed that there was no causal connection between the accident and plaintiff's back problems. He reached this conclusion based strictly upon reviewing the other doctors' combined information, and conducted no X-rays of his own. Further he only saw plaintiff for a one-hour period.
Although Dr. Horenstein diagnosed that the automobile accident did not cause plaintiff's *685 problems, the Court finds Dr. Eller's testimony that the accident was the cause of plaintiff's injuries to be more credible. Additionally, the testimony of Dr. Brookreson supports this conclusion.
Plaintiff's total medical bills as a result of his back injury are approximately two thousand five hundred dollars. Plaintiff did not work at all for fifty four weeks, from May 25, 1984, until June 10, 1985, because of his injury.
Plaintiff was self employed as a certified automotive mechanic at the time of his injury and he had recently acquired the automobile repair business and service station which he was operating. He had purchased the station just one month before the accident. When he purchased the station he paid $10,000 for a down payment and then was required to make monthly payments. Because of the injury, plaintiff was unable to make the monthly payments, and the seller repossessed the garage. Plaintiff did not receive any of his down payment back. He was earning net income from his self-employment of approximately four hundred dollars per month prior to his injury. It is not likely that plaintiff will be able to return to employment as a mechanic because he is unable to bend, stoop and lift much weight without aggravating his back condition, and mechanic work required a great deal of lifting, bending and stooping.
On June 10, 1985 plaintiff went to work as a truck driver earning two hundred dollars per week and he has continued to work as a truck driver since that time at approximately the same rate of pay. Plaintiff admitted in his testimony that he earned more money as a truck driver than he ever did as a mechanic.
On May 7, 1986, plaintiff filed a claim for administration settlement with the United States Army Corps of Engineers in the amount of $250,000.00. No final disposition of the claim was made by the Corps of Engineers within six months after the claim was filed. Plaintiff then initiated this lawsuit.

CONCLUSIONS OF LAW
This Court has jurisdiction pursuant to the Federal Tort Claims Act. Title 28 U.S.C. §§ 1346(b), 2671, et seq. Under the FTCA, this Court is bound to follow Missouri law in determining plaintiff's right to recover damages. Title 28 U.S.C. § 2674. It is undisputed that Terry Whitmer was a civilian employee of the United States Government, and that he was acting within the course of his employment at the time of the accident giving rise to plaintiff's claim.
General Missouri law requires that to establish a cause of actionable negligence, the plaintiff must demonstrate (1) that the defendant owed a duty to the plaintiff; (2) that defendant breached the duty through act or omission; and (3) plaintiff was thereby proximately injured. Allnutt v. U.S., 498 F.Supp. 832, 838 n. 9 (W.D.Mo.1980).
The law in Missouri has been firmly established with regard to the duty of one operating a motor vehicle on a public roadway. Section 304.010 of the Missouri Revised Statutes creates a duty that every person operating a motor vehicle on the highways in Missouri must exercise the highest degree of care.
The words "operating a motor vehicle" within § 304.010 encompass all acts necessary to be performed in the movement of a motor vehicle from one place to another or fairly incidental to the ordinary course of its operation, including all acts which are reasonably connected with entering the vehicle at the point of departure and alighting therefrom at the destination. Thaller v. Skinner & Kennedy Co., 315 S.W.2d 124, 130 (Mo. banc 1958); see also, Penn v. Columbia Asphalt Co., 513 S.W.2d 679 (Mo.App.1974). A motorist stopped on the roadway to repair an automobile is considered to be "operating" an automobile within the provision requiring the highest degree of care. Stewart v. Jeffries, 224 Mo.App. 1050, 34 S.W.2d 560, 562 (1931).
A claim of negligence requires that the actions of the defendant be the proximate cause of the injury. Proximate cause is cause which may be reasonably regarded as a direct, producing or efficient *686 cause, or as entering into and forming a part of the direct, producing or efficient cause of the injury. McConnell v. PicWalsh Freight Co., 432 S.W.2d 292, 297 (Mo.1968). Prior and remote cause cannot be made the basis of a negligence action if the remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, and there intervened between that cause and the injury a distinct, successive, unrelated, and efficient cause of the injury, though the injury would not have occurred but for the condition or occasion. Clymer v. Tennison, 384 S.W.2d 829, 835 (Mo.App. 1964).
In Gustafson v. Benda, 661 S.W.2d 11 (Mo. banc 1983), Missouri supplanted the rule of contributory negligence with the more equitable system of comparative fault. Accordingly, where there is evidence that the conduct of both parties combined or contributed to cause damage, the fact finder should not be precluded from comparing the respective contributions toward such causation made by each party. Allison v. Sverdrup & Parcel & Assoc., Inc., 738 S.W.2d 440, 451 (Mo.App. 1987). Missouri has judicially adopted the "pure" form of comparative fault. Under the "pure" form, a plaintiff's negligence that concurs with that of the defendant does not relieve the defendant from liability. It merely diminishes the amount of damages that plaintiff can recover. Lippard v. Houdaille Industries, Inc., 715 S.W.2d 491, 493 (Mo. banc 1986). A fact finder can still find under comparative fault that the defendant's negligence is the sole proximate cause, and not apportion damages at all. Kramer v. Chase Resorts, Inc., 777 S.W.2d 647, 652 (Mo.App.1989). Comparative fault has no application, however, where the negligence of one party is the sole proximate cause of an accident, and the other party is not guilty of negligence. Cowan v. Perryman, 740 S.W.2d 303, 304 (Mo.App.1987).
Plaintiff has established that defendant owed a duty to plaintiff to operate its motor vehicle with the highest degree of care. When Whitmer alighted from the truck to help plaintiff, he still had to operate the truck with the highest degree of care. Thaller, 315 S.W.2d at 130. Plaintiff has further established that defendant failed to exercise the highest degree of care when Whitmer failed to properly secure the truck after parking it on a very steep hill above the plaintiff. Further, he left the truck unattended without first determining that the truck was secure and would not roll backwards. Finally, there is no doubt that the defendant's breach was the proximate cause of plaintiff's injuries. Thus, plaintiff has established a claim of negligence against defendant.
Defendant contends, however, that plaintiff is also at fault. When plaintiff was stopped on the roadway repairing Mr. Moore's truck, plaintiff was "operating" an automobile. Thus, plaintiff had a duty to exercise the highest degree of care. Defendant maintains that plaintiff's actions of working on the stalled truck in the middle of the highway was a failure to exercise the highest degree of care. This may be true. But, even assuming that plaintiff breached his duty to exercise the highest degree of care when he worked on the truck in this fashion, plaintiff's actions were not the proximate cause of his injury. Plaintiff's actions were simply a prior and remote cause of his injury. Plaintiff's actions of leaving the truck in the middle of the lane did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible. Clymer, 384 S.W.2d at 835. After plaintiff's actions created the condition, defendant's actions intervened as a distinct, successive and unrelated cause of the injury. Id. To be sure, plaintiff never would have been injured had he towed the car off of the road before working on it, because defendant would not then have stopped to aid plaintiff in removing the truck from the road. However, plaintiff's actions cannot be said to be the proximate cause of his injuries.
As defendants actions were the sole proximate cause of the injuries to plaintiff, comparative fault has no application in this action. Cowan, 740 S.W.2d at 304. Even if comparative fault did apply in this action, the Court would find that the plaintiff was not at fault in any percentage, because plaintiff's actions were not the proximate *687 cause of his injuries. Kramer, 777 S.W.2d at 652.
The Court finds that plaintiff has suffered damages in the amount of $50,000.00 which includes damages for his medical bills, for pain and suffering, for the fifty four weeks of not being able to work, for loss of his service station, and to compensate him for his permanent partial disability of 20%. The Court does not award damages for future lost wages because plaintiff stated that he is now earning more as a truck driver than he could as a mechanic.
In conclusion, the Court finds that defendant was negligent, and that there was no comparative negligence on the part of plaintiff. The Court further finds that plaintiff is entitled to damages in the amount of $50,000.00. Judgment will be entered accordingly.