Ardys Rose STEVENS and R.E. Stevens, Appellants,

v.

Darrell J. KLIETHERMES, One Way Pizza, Inc. and Domino's Pizza, Inc., Respondents.

No. WD 43323.

Missouri Court of Appeals, Western District.

June 18, 1991.

Erwin L. Milne, Beverly J. Figg, Stockard, Andereck, Hauck, Sharp and Evans, Jefferson City, for Ardys Rose Stevens and R.E. Stevens.

Michael A. Dallmeyer, J. Michael Ponder, Hendren and Andrae, Jefferson City, for Kliethermes and One Way Pizza, Inc.

James W. Gallaher, Carson & Coil, Jefferson City, for Domino's Pizza, Inc.

Before TURNAGE, P.J., and LOWENSTEIN and BRECKENRIDGE, JJ.

TURNAGE, Presiding Judge.

Ardys Stevens and her husband filed suit against Darrell Kliethermes and his employer, One Way Pizza, and Domino's Pizza [1] for injuries sustained by Ardys in a collision between a truck driven by Kliethermes and her car. The jury returned a verdict in the amount of $60,000 in favor of Ardys and assessed fault against Ardys of 83%, and 17% against Kliethermes. [2] Judgment was entered against One Way and Kliethermes for $10,200. Ardys contends there was no substantial evidence to support the giving of the comparative fault instruction against her and complains of the apportionment of fault. Reversed and remanded.

Ardys was driving northbound on Highway 54 in Jefferson City about 5:15 p.m. on November 10, 1986. It was dark and raining. Ardys testified that there was no traffic immediately ahead of her but there was heavy traffic going southbound. The highway had two lanes for northbound traffic and two lanes for southbound traffic separated by a median. The median had a curb of about six inches in height and the space between the highways was about four feet.

Ardys testified that headlights of an approaching car, later identified as the Kliethermes truck, appeared to be coming across the median and did cross the median and shoot across the highway. She was traveling in her right lane when Kliethermes shot across the highway. She testified that he was coming at her in her right lane and she changed to the left lane. She said he then headed for the left lane and she was going to change back to the right lane when he struck her. Kliethermes testified the damage to Ardys' car was in the front and on the passenger side.

Ardys stated that she was traveling 35 to 40 miles per hour when the headlights came across the median into her lane of traffic. She changed lanes to the left lane, applied her brakes, moved her seat back by the electronic control, and slowed to about 20 to 30 miles per hour at the time of impact. After striking Ardys' car the truck driven by Kliethermes went across the right lane and right shoulder and struck a highway sign. The truck came to rest upside down in a ditch. Ardys stated it was a matter of seconds from the time Kliethermes started across the median until the impact. Both the car and truck were damaged beyond repair.

Kliethermes testified that he was driving his father's pick-up which was in fair mechanical condition but did have worn tires and two tires had broken belts. He said he was traveling southbound at a speed between 45 and 55 miles per hour to deliver a pizza for One Way when he attempted to pass a car and the rear end of his truck

---

1. Ardys alleged that One Way was the agent of Domino's but the jury found there was no agency. Although Domino's is named as a respondent by Ardys on this appeal, no claim of error is raised in Ardys' brief as against Domino's. In that situation any appeal as against Domino's is considered abandoned. *Estate of Huskey v. Monroe,* 674 S.W.2d 205, 208[1] (Mo.App.1984). The Stevens have filed a motion in this court to remand this cause to the trial court to give them an opportunity to file an amended motion for new trial as to Domino's. The motion is denied.

2. The jury did not award any damages to Ardys' husband and no issue is raised about that on this appeal.

began fish-tailing and he lost control. The truck crossed the median with Kliethermes unable to control its movement. He said the truck may have skidded around before he struck Ardys. He failed to say what portion of the northbound lanes his truck occupied prior to the impact. Kliethermes said the truck came to rest against a highway sign on the east side of the highway after the collision. He had no idea as to the length of time from the time he crossed the median until the impact.

Richard Martin was driving two to three car lengths behind Ardys when he saw a truck swerve in the southbound lanes, hit the curb and become airborne. The truck thereafter struck Ardys' car. Martin was traveling in his right lane and he stated Ardys was in the left lane at the time of the impact. He stated he did not see Ardys change lanes. He said the truck flipped across the highway after the impact and came to rest against a highway sign. Martin said the entire accident "happened so fast, it was just one, two, three."

There was no evidence of the distance from Kliethermes' truck to Ardys' car at the time he became airborne and crossed over into the northbound lanes. No witness was asked about any distances.

Ardys contends there was no evidence to support the instruction submitting her fault to the jury. In reviewing this claim this court must view the evidence in the light most favorable to submission of the instruction. *Kim v. Conway & Forty, Inc.*, 772 S.W.2d 723, 727[3, 4] (Mo.App. 1989). The court submitted comparative fault on the part of Ardys by Instruction No. 12 which read as follows:

### INSTRUCTION NO. 12

In your verdict you must assess a percentage of fault to plaintiff Ardys Stevens, whether or not defendant Darrell Kliethermes was partly at fault, if you believe:

First, plaintiff knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have swerved to the right shoulder, or remain in the right hand lane, but plaintiff failed to do so, and

Second, plaintiff Ardys Stevens was thereby negligent, and

Third, such negligence of plaintiff Ardys Stevens directly caused or directly contributed to cause any damage plaintiff may have sustained.

MAI 37.02, 17.04 modified

Offered by Defendant Darrell Kliethermes and Defendant One Way Pizza, Inc.

This instruction submitted negligence on the part of Ardys in the disjunctive, that is she could have swerved to the right shoulder or remained in the right lane. A verdict directing instruction which submits two or more assignments of negligence in the disjunctive must be supported by evidence as to each assignment. *Bushong v. Marathon Elec. Mfg. Corp.*, 719 S.W.2d 828, 831[1, 2] (Mo.App.1986). Kliethermes contends the evidence shows Ardys had time to get out of the right lane because she in fact did change from the right lane to the left. However, the question is not whether Ardys had time to change lanes but under the instruction the question is whether there is evidence to support a finding that Ardys was negligent in failing to remain in the right lane.

The only evidence as to the location of the truck as it traveled down the northbound lanes came from Ardys. She said the truck was coming at her in her right lane and she left that lane to get out of the way. She thereafter saw the truck coming toward her in the left lane and she was struck. Kliethermes did not state which of the northbound lanes he occupied but stated he may have skidded around prior to the impact. Thus, the only evidence is that the truck was in the northbound right lane and Ardys changed lanes in an attempt to avoid the collision. She testified that only a few seconds elapsed from the time the truck started across the median until the impact. There was no evidence of the speed of the truck as it traveled in the northbound lane. That evidence does not support an instruction that Ardys directly caused or contrib-

uted to cause the accident by remaining in the right lane. The fact that the impact occurred in the left lane does not support a submission that Ardys could have stayed in the right lane in the face of her testimony that the truck was coming at her in the right lane and she changed lanes to avoid the truck. It would require pure speculation for the jury to conclude under all the evidence that Ardys could have stayed in the right lane and thereby avoided the accident.

In the face of the evidence that Kliethermes was approaching Ardys in the right lane and that she changed to the left in an attempt to avoid him, the instruction submitting contributory fault on the part of Ardys for moving out of the right lane was not supported by the evidence.[3] It is error to give an instruction when there is no evidence to support it. *Titsworth v. Powell*, 776 S.W.2d 416, 423[18] (Mo.App.1989). There can be no question about the prejudicial effect of this instruction because it allowed the jury to assess a percentage of fault against Ardys.

It is not necessary to explore whether there is evidence to support the submission that Ardys could have swerved to the shoulder because there was no evidence to support the submission discussed.

It is impossible to determine from this record if sufficient evidence is available to

support the giving of a comparative fault instruction as against Ardys. In that situation a remand will be ordered. *Moss v. National Super Markets, Inc.*, 781 S.W.2d 784, 786[3] (Mo. banc 1989).

Although Ardys does not contend that a verdict of $60,000 for her injuries is insufficient, she does contend that the amount she would receive with apportionment of 83% of fault against her would be inadequate. She therefore complains about the percentages of fault found by the jury. Under comparative fault the jury is given the responsibility of assessing the relative fault of the parties.[4] *Kramer v. Chase Resorts, Inc.*, 777 S.W.2d 647, 651[1–3] (Mo.App.1989). This court cannot weigh the evidence to determine whether the jury properly assessed the percentages of fault.[5] However, because of the error in giving Instruction No. 12, the judgment must be reversed, and as noted the cause will be remanded.

Because Ardys does not complain about the $60,000 in damages found by the jury there is no error in the verdict as to the amount of damages. In that posture of the case, the remand will be for a retrial on the issue of comparative fault only. *Brooks v. Bi–State Development Agency*, 787 S.W.2d 713, 715 (Mo. banc 1990) (no need to retry issue as to which no claim of error is made).

**3.** Some mention is made of Ardys' testimony on cross-examination that she may have changed lanes more than once prior to the collision, however, she explained that the truck was "just all over the place" and whatever lane changes were made was an effort to avoid the truck. This does not provide evidence that she could have avoided the accident by remaining in the right lane. Kliethermes argues this evidence shows Ardys had time to take evasive action. However, without evidence of time and distance between the truck and Ardys after the truck crossed the median, this evidence would only serve as a basis for speculation, and not proof which would support the giving of an instruction.

**4.** The concurrence would allow an appellate court to reverse a judgment solely on a finding that the percentages of fault assessed by the jury are erroneous. Cited in support of this proposition are cases from Illinois and New Jersey. The Illinois cases hold that the standard for interfering with the allocation of fault made by

the jury is a finding by the appellate court that the verdict is against the manifest weight of the evidence. As conceded by the concurrence, the appellate courts in Missouri do not weigh the evidence. The New Jersey case was decided under the authority of appellate courts in that state to order additur or remittitur.

**5.** The concurrence would reverse on the ground the percentages of fault are not supported by the evidence. In reality this is weighing the evidence. But even if this court could reach the percentages in that manner, what quantum of evidence would support a finding of 50% fault but not 83%? Such query reveals that the allocation of fault requires a weighing of the evidence by the jury. Under § 2(a)(2) of the Uniform Comparative Fault Act the jury is to consider the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. For an appellate court to second guess a jury's allocation of fault, it would be required to follow the same process as the jury.

The judgment on Ardys' claim awarding her the sum of $10,200 is reversed and the court is directed to hold the jury verdict assessing damages in the amount of $60,000 in abeyance. This cause is remanded for a new trial. If the court finds sufficient evidence to submit the issue of the comparative fault of the parties, the court is directed to apply the percentages assessed in the new trial against the $60,000 damage verdict and render judgment accordingly. If the court finds insufficient evidence to submit the issue of comparative fault, it shall enter judgment for Ardys for $60,000. The judgment in favor of Kliethermes and One Way on R.E. Stevens' claim is affirmed. The judgment in favor of Domino's on the claims of Ardys and R.E. Stevens is affirmed.

BRECKENRIDGE, J., concurs.

LOWENSTEIN, J., concurs in result in separate opinion.

LOWENSTEIN, Judge, concurring in result.

I concur with the majority affirming the judgment for Kliethermes and One Way on Mr. Stevens' consortium claim, and in treating as abandoned the Stevens' appeal as to the liability of Domino's. For different reasons, I agree the case should be reversed and remanded for new trial only on the percentage of fault question.

I disagree with the majority which bases a reversal on a failure of the evidence to support Kliethermes' instructions inviting the jury to assess the plaintiff's comparative fault.

To make a submissible case on Stevens' comparative fault, Kliethermes had the burden of proof and was required to adduce either substantial evidence of probative value or *inferences* that could be reasonably drawn from circumstantial evidence. *Henderson v. Terminal Railroad Assoc.*, 736 S.W.2d 594 (Mo.App.1987); *Bridgeforth v. Proffitt*, 490 S.W.2d 416 (Mo.App.1973) (emphasis added). "Substantial evidence is that which, if true, has probative force upon the issues and from which the trier of facts can reasonably

decide a case." *Sheridan v. Sunset Pools of St. Louis*, 750 S.W.2d 639, 641 (Mo.App. 1988).

All of the evidence regarding how the accident happened consisted of the testimony by Kliethermes, Mrs. Stevens and Martin. Summarized, Kliethermes testified he was some five minutes behind in his pizza delivery. He was driving a truck in "fair condition" which may have had a "broken belt" on two of the tires. He testified that when he crossed the median he went "straight" on the other side. He pled guilty to careless and imprudent driving. Stevens testified she saw Kliethermes' vehicle careening between lanes, she slowed down and she switched lanes, took a hand off the steering wheel and adjusted her seat back before the collision. The reasonable inferences from this evidence are that if she had time to do these acts, she also had time to swerve in the other direction or to have stayed in the outside lane, as did the witness Martin, to avoid Kliethermes.

Generally, contributory negligence is a matter for the jury and should be taken from them "only if reasonable minds could not differ as to the existence or absence of negligence." *Powell v. Norman Lines, Inc.*, 674 S.W.2d 191, 197 (Mo.App.1984). A directed verdict is a drastic action because it takes the case away from the jury, and it should be granted only if reasonable persons could not differ on the disposition of the case. *Hawkins v. Compo*, 781 S.W.2d 128, 133 (Mo.App.1989). Furthermore, a directed verdict is seldom proper where proof is dependent upon oral testimony, as it is here. *Moore v. Smith*, 657 S.W.2d 664, (Mo.App.1983); *Kartsonis v. Hardwick*, 628 S.W.2d 714, 715 (Mo.App. 1982). Upon review, this court will view the evidence in the light most favorable to the nonmoving party, which here is Kliethermes. *Id.* Viewed in a light most favorable to the submission, *Cowan v. Perryman*, 740 S.W.2d 303, 304 (Mo.App.1987), the jury could have believed the defendant's truck came down the left lane and could have inferred some negligence to the plaintiff because of the actions she took when danger appeared. Under the compa-

rative fault doctrine announced in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), *any* contributory fault charged to the claimant diminishes proportionately the amount of the award. *Kramer v. Chase Resorts, Inc.,* 777 S.W.2d 647, 650 (Mo.App. 1989). (Emphasis added).

There is not even a hint of any new or different evidence that could be presented on the fault issue. The pizza driver will still be flying through the air on the wrong side, Ms. Stevens will still be adjusting, and the witness won't have remembered any more.

If as the majority says there was insufficient evidence of Stevens fault before, such will be the same again. Both sides stood on their evidence, and the jury could have inferred from the evidence Mrs. Stevens could, and *did* have time and necessary distance to take evasive action using the highest degree of care. No experts or reports are needed to reinforce the reasonable inferences. If, as the majority holds, there was insufficient evidence to support the giving of an instruction on Stevens' fault, then such a submission was in error, and the plaintiff gets all the verdict damages. That result, would amount to a directed verdict for the plaintiff on the issue of negligence—not a common conclusion.

The dispositive issue presented in this case concerns the scope of appellate review of comparative negligence in a suit where the jury's apportionment of fault to a party-plaintiff is not supported by substantial evidence but the plaintiff's motion for new trial has been overruled. The apportionment here would be the equivalent of an award on the damages issue of either $5 or $5 million.

When as here, a motion for new trial has been overruled, the correct standard of review is the trial court's ruling will be upheld if there was substantial evidence to support the verdict. *Anderson v. Mutert,* 619 S.W.2d 941, 946 (Mo.App.1981), citing to *Goodin v. May,* 474 S.W.2d 33, 35 (Mo. App.1971), ("In the final analysis, whether an appeal follows the denial or granting of a motion for new trial, the ultimate function of the reviewing court is to determine if the trial court's order was proper.") "Under Missouri law, a jury verdict will not be overturned unless there is a complete absence of probative facts to support the verdict." *Treon v. Hayes,* 721 S.W.2d 789, 791 (Mo.App.1986); *Massey–Ferguson Credit Corp. v. Black,* 764 S.W.2d 137, 145 (Mo.App.1989); *Minden v. Otis Elevator Co.,* 793 S.W.2d 461, 462 (Mo.App.1990). This court will not weigh the evidence because that is the sole function of the trial court. *Veach v. Chicago and Northwestern Transportation Company,* 719 S.W.2d 767 (Mo. banc 1986). Instead, this court will determine only whether the trial court abused its discretion in overruling plaintiff's motion for new trial, and in entering judgment on the jury's verdict. *Clark v. Quality Dairy Company,* 400 S.W.2d 78, 81–82 (Mo.1966) (Appellate court's function under acts of 1891 and 1895 relating to new trials is *not* to interfere with a trial court's discretionary rulings and *not* to weigh conflicting evidence, but, instead, to reverse only if there is no substantial evidence to support it, or if errors of law were committed by the trial court).

In determining whether there was substantial evidence or a complete absence of probative facts to support the verdict, a court must view the evidence in the light most favorable to the non-moving party, *Anderson v. Mutert,* 619 S.W.2d at 946, and to the verdict and trial court's approval of it. *Schrock v. Lawrence's Estate,* 327 S.W.2d 836, 837 (Mo.1959). Evidence favorable to the jury's finding that Mrs. Stevens was 83% at fault is that once Kliethermes jumped the median, Mrs. Stevens responded by changing lanes, reducing her speed and moving her seat back. Kliethermes argues that if she had time to do these acts, she also could have swerved into the road's right shoulder to miss Kliethermes as he swerved back and forth between the right and left northbound lanes. Kliethermes, however, is bound by his own admission that he lost control over his vehicle that had defective tires as he was trying to pass another car in the rain at dusk. He admitted pleading guilty to a charge of careless and imprudent driving. The jury's apportionment of 83% fault to

Mrs. Stevens is not supported by substantial evidence, and the trial court abused its discretion in overruling Mrs. Stevens' motion for new trial.

I am not unmindful of a dubious precedent in suggesting the ability of appellate court review of a jury verdict. In this case, viewed in a light favorable to the verdict, there was not sufficient evidence to support a verdict assessing 83% of fault to Mrs. Stevens. It would only be in the *rarest* of cases where, on appeal, either party may successfully contest the verdict on apportionment of fault when it has survived a new trial motion. Only in a factual situation such as the one here, where evidence is immune to credibility considerations and it so blatantly contradicts the verdict, should an appeals court intervene. There is no substantial evidence in the case at bar to justify an 83% apportionment of fault to Mrs. Stevens. This result would be consistent with the principles of law applied in Illinois and New Jersey that permit appellate courts to review juries' apportionments of fault. *See e.g., Ford v. City of Chicago,* 132 Ill.App.3d 408, 87 Ill.Dec. 240, 476 N.E.2d 1232 (1 Dist.1985); *Kohutko v. Four Columns, Ltd.,* 148 Ill.App.3d 181, 101 Ill.Dec. 198, 498 N.E.2d 522 (1 Dist.1986); *Lowe v. Kang,* 167 Ill.App.3d 772, 118 Ill.Dec. 552, 521 N.E.2d 1245 (2 Dist.1988), and *Bishop v. Harski,* 191 N.J.Super. 109, 465 A.2d 577 (L.1983).

What this decision comes down to is an attempt to correct an obvious mis-assessment of fault between the two drivers. The easy solution would be to let stand the jury verdict, citing the limited scope of Missouri appellate review. The majority seeks to correct a bad result—my only quarrel is the method used. To say the contributory fault instruction was not or might not have been supported by evidence carries only the conclusion a directed verdict should have been entered for the plaintiff. Since she has not appealed the amount, the majority approach should mandate a $60,000 judgment to Ms. Stevens.

The course used by the majority falls into the same trap it says snares the dissent. An appellate court must review the quantum (or weight) of evidence to submit a contributory fault instruction. To reach a decision there was insufficient evidence of Ardys' fault here to submit, involves the same deductive process as the dissent in concluding there was insufficient evidence to support the verdict. There was sufficient evidence to give instruction No. 12, I would give another jury another chance to fairly apportion fault. There is no need to now determine the submissibility of this instruction.

I concur in result and would reverse and remand only for a new trial on the issue of comparative fault on Mrs. Stevens' claim, and would affirm the remaining portion of the judgment.